Thad T. Dameris (*pro hac vice*)
HOGAN LOVELLS US LLP
700 Louisiana Street, Suite 4300
Houston, Texas 77002
Tel: 713-632-1400
Fax: 713-583-6297
thad.dameris@hoganlovells.com

Norman J. Blears (State Bar. No. 95600)
HOGAN LOVELLS US LLP
525 University Avenue, 4th Floor
Palo Alto, California 94301
Tel: 650-463-4000
norman.blears@hoganlovells.com
Counsel for Defendants AIRBUS S.A.S.; AIRBUS AMERICAS, INC.;
AND AIRBUS AMERICAS SALES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE: AIR CRASH OVER THE MID-ATLANTIC ON JUNE 1, 2009**<br><br>ANNA HUDECOVA, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>AIRBUS S.A.S., et al.<br><br>Defendants. | **MDL DOCKET NO. 3:10-md-2144 CRB**<br><br>**This Document Relates To Case No.: 10-1828**<br><br>**ORIGINAL ANSWER AND THIRD- PARTY COMPLAINT OF AIRBUS S.A.S.** |

**I.**
**ANSWER**

Subject to its affirmative defenses, and without waiver of any rights, privileges, or defenses, and without conceding the appropriateness of this forum for resolution of this dispute, Defendant AIRBUS S.A.S. ("Airbus") files this Original Answer and Third-Party Complaint ("Answer") to Plaintiffs' Complaint ("Complaint") and would show the Court as follows:

**JURISDICTION**

1. Paragraph 1 of the Complaint contains conclusions of law to which no response is required. To the extent a response by Airbus is deemed required, Airbus denies the allegations contained in paragraph 1, except that Airbus admits that this Court has subject matter jurisdiction under 28 U.S.C. § 1369.

**INTRADISTRICT ASSIGNMENT**

2. Paragraph 2 of the Complaint contains conclusions of law to which no response is required. To the extent a response by Airbus is deemed required, Airbus denies the allegations contained in paragraph 2.

**PARTIES**

3. Airbus is without sufficient knowledge or information to admit or deny the factual allegations set forth in paragraphs 3-6 of the Complaint, and, on that basis, denies the allegations.

4. Airbus admits that it is a *société par action simplifiée* organized under the laws of France with its principal place of business in Toulouse-Blagnac, France. Airbus further admits that the aircraft flown as Air France Flight 447 on May 31-June 1, 2009, an Airbus A330-203 registered as F-GZCP (the "Aircraft") was designed, assembled, and placed in the stream of commerce by Airbus in France. Except as expressly admitted, Airbus denies the remaining allegations of paragraph 7 of the Complaint.

5. Paragraph 8 contains conclusions of law to which no response is required. To the extent a response by Airbus is deemed required, Airbus denies the allegations contained in paragraph 8 of the Complaint.

6. Paragraphs 9-28 of the Complaint are directed at defendants other than Airbus and no response from Airbus is required. To the extent a response from Airbus is deemed required, Airbus is without sufficient knowledge or information to admit or deny the factual allegations in paragraphs 9-28 of the Complaint, and, on that basis, denies the allegations.

**GENERAL ALLEGATIONS**

7. Airbus admits that on May 31, 2009, Société Air France ("Air France") operated the Aircraft as Air France Flight 447 from Rio de Janeiro, Brazil bound for Paris, France ("AF

447"). Airbus admits that AF 447 had 216 passengers and 12 crew members on board, that the Aircraft crashed into the high seas of the Atlantic Ocean off the coast of Brazil while en route to Paris, France, and that there were no survivors. Except as expressly admitted, Airbus denies the allegations in paragraph 29. Paragraph 29 also contains conclusions of law to which no response is required.

8. Airbus is without sufficient knowledge or information to admit or deny the factual allegations set forth in paragraph 30 of the Complaint, and, on that basis, denies the allegations.

9. In response to the allegations in paragraph 31 of the Complaint, Airbus admits that the Aircraft was owned and operated by Air France.

10. Airbus admits that the Aircraft was designed, assembled, and placed in the stream of commerce by Airbus in France. Except as expressly admitted, Airbus denies the remaining allegations in paragraph 32 of the Complaint.

11. Paragraphs 33-42 of the Complaint are directed at defendants other than Airbus and no response from Airbus is required. To the extent a response from Airbus is deemed required, Airbus denies the allegations in paragraphs 33-42 of the Complaint.

12. Airbus denies the allegations in paragraph 43 of the Complaint. Paragraph 43 also contains conclusions of law to which no response is required.

13. Paragraph 44 of the Complaint contains conclusions of law to which no response is required. To the extent a response from Airbus is deemed required, Airbus denies the allegations in paragraph 44.

**COUNT I**
**Negligence; Against all Defendants**

14. In response to Plaintiffs' allegations in paragraph 45 of the Complaint, Airbus adopts and incorporates by reference its responses to paragraphs 1 through 44 of the Complaint.

15. Paragraphs 46 and 47 of the Complaint contain conclusions of law to which no response is required. To the extent a response from Airbus is deemed required, Airbus denies the allegations in paragraphs 46 and 47 of the Complaint.

16. Airbus admits that AF 447 crashed into the Atlantic Ocean and that there were no survivors. Except as expressly admitted, Airbus denies the remainder of the allegations in

paragraph 48 of the Complaint. Paragraph 48 also contains conclusions of law to which no response is required.

Airbus denies all allegations in Count I not specifically admitted, denied, or otherwise responded to above.

WHEREFORE, Defendant Airbus S.A.S. moves the Court to enter judgment in its favor dismissing Plaintiffs' Complaint with prejudice, to award Airbus S.A.S. its costs incurred in this action, and to grant Airbus S.A.S. all other appropriate relief.

**COUNT II**
**Products Liability; Against all Defendants**

17. In response to Plaintiffs' allegations in paragraph 49 of the Complaint, Airbus adopts and incorporates by reference its responses to paragraphs 1 through 48 of the Complaint.

18. Airbus admits that the Aircraft was designed, assembled, and placed in the stream of commerce by Airbus in France. Except as expressly admitted, Airbus denies the remaining allegations of paragraph 50 of the Complaint. Paragraph 50 also contains conclusions of law to which no response is required.

19. Airbus denies the allegations in paragraphs 51 and 52 of the Complaint. Paragraphs 51 and 52 also contain conclusions of law to which no response is required.

20. Airbus admits that AF 447 crashed into the Atlantic Ocean and that there were no survivors. Except as expressly admitted, Airbus denies the remainder of the allegations in paragraph 53 of the Complaint. Paragraph 53 also contains conclusions of law to which no response is required.

Airbus denies all allegations in Count II not specifically admitted, denied, or otherwise responded to above.

WHEREFORE, Defendant Airbus S.A.S. moves the Court to enter judgment in its favor dismissing Plaintiffs' Complaint with prejudice, to award Airbus S.A.S. its costs incurred in this action, and to grant Airbus S.A.S. all other appropriate relief.

**JURY DEMAND**

21. Airbus hereby demands a trial by jury on all issues so triable.

22. Except as expressly admitted herein, Airbus denies all allegations contained in the Complaint. Airbus further denies that Plaintiffs are entitled to the relief sought against Airbus in the Complaint.

## II.
## AFFIRMATIVE DEFENSES

1. The Complaint should be dismissed pursuant to the doctrine of *forum non conveniens* because adequate and more appropriate available fora exist.

2. The Complaint fails to state a claim against Airbus upon which relief can be granted.

3. Plaintiffs may lack capacity or standing to maintain this action.

4. The Complaint, and all Counts in the Complaint, should be dismissed because Plaintiffs have failed to join necessary and indispensable parties.

5. Plaintiffs' alleged damages, if any, were proximately caused, solely or partially, by the negligence and/or fault of persons, firms, corporations, entities, or parties hereto, other than Airbus, for whom Airbus is not responsible, and over whom Airbus had no control or right of control, including but not limited to the operation, modification, alteration, or change in the condition of the Aircraft. Such acts or omissions were intervening, interceding, or superseding causes of Plaintiffs' damages from which Airbus had no duty and no opportunity to protect Plaintiffs and/or decedents. Accordingly, Airbus is not liable to Plaintiffs; or, in the alternative, Airbus's liability to Plaintiffs must be reduced by the percentage of fault attributable to other persons, firms, corporations, entities, or parties, in accordance with applicable law.

6. The design of the Aircraft delivered by Airbus was consistent with or exceeded the state of the art at the time of its design and manufacture.

7. At the time the Aircraft left Airbus's control, there were no practical and technically feasible alternative designs that would have prevented the alleged injuries without substantially impairing the reasonably anticipated or intended function of the aircraft.

8. The benefits of the design of the Aircraft outweigh its inherent risks, if any.

9. Airbus is not liable because the Aircraft was subject to unforeseeable and improper misuse or handling.

10. The conduct or fault of Airbus, if any, was not a substantial factor in bringing about Plaintiffs' alleged damages, and therefore was not a producing, proximate, or contributing cause of any injuries or damages suffered by Plaintiffs.

11. Airbus did not omit any instructions, warnings, or other communications that would have reduced the foreseeable risks of harm, if any, posed by the Aircraft.

12. The Aircraft was intended for, and sold to, a knowledgeable and sophisticated user over whom Airbus had no control. The warnings and instructions which accompanied the sale of the aircraft were sufficient to exculpate Airbus from any liability to the Plaintiffs.

13. The manufacture and marketing of the Aircraft, including the provision of related warnings, service bulletins, notices, and other communications, are controlled by federal and international law, and Airbus was at all times in compliance and obedience with the applicable laws and regulations. If Plaintiffs' causes of action against Airbus are permitted and allowed, they would impede, impair, frustrate, and/or burden the effectiveness of law regulating transportation and would constitute an invalid burden on interstate commerce, violating the supremacy and commerce clauses of the United States Constitution, Article VI, Section 2 and Article 1, Section 8, respectively. Thus, Plaintiffs' claims are preempted or barred by applicable law.

14. All training and training materials provided by Airbus fully complied with all applicable government rules, laws and regulations at the time such materials were provided.

15. All training and training materials provided by Airbus fully complied with the state-of-the-art and/or applicable industrial standards at the time such materials were provided.

16. This is an action in admiralty and Plaintiffs' claims and damages are barred or limited, in whole or in part, by the provisions of the Death On The High Seas Act, 46 U.S.C.A. §§ 30301, *et seq.*

17. Airbus reserves the right to make an election of credit or setoff for any settlements as allowed pursuant to the applicable law.

18. Any award or judgment rendered in favor of the Plaintiffs must be reduced by the amount of benefits Plaintiffs received, or are entitled to receive, from any source.

19. Plaintiffs' claims may be barred in whole or part, under the applicable law, because they have already received full satisfaction and/or compensation for their alleged injuries and damages, and their claims may be barred by Plaintiffs' prior accord and satisfaction with any party or third party.

20. Airbus reserves the right to assert against the Plaintiffs, co-defendants, or any other subsequent defendants or third parties, any other claims or affirmative defenses that may develop during the course of investigation, discovery, and litigation of this action.

21. To the extent that California law may apply, any liability of this defendant for non-economic damages is not joint but only several pursuant to California Civil Code §1431.2.

## III.
## NOTICE OF APPLICABILITY OF THE LAW OF ANOTHER JURISDICTION

Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Airbus hereby gives notice that it intends to raise issues concerning the applicability of the law of other jurisdictions, including but not limited to that of Brazil and/or France, to some or all of the claims and defenses

stated herein, and reserves the right to assert and plead such other claims and defenses available to it arising out of the application of the substantive laws of another jurisdiction.

## IV.
## THIRD-PARTY COMPLAINT AGAINST AIR FRANCE

Pursuant to Rule 14(a)(1) of the Federal Rules of Civil Procedure, Defendant and Third-Party Plaintiff AIRBUS S.A.S. ("Airbus") brings this Complaint against Third-Party Defendant Société Air France ("Air France"). Airbus brings this Third-Party Complaint in accordance with the requirements of Rule 14 and to protect its rights under the Rules and does not, by filing this Complaint, concede or agree that this is a convenient or appropriate forum for resolving these or any other claims arising from the facts set forth below. Subject to and without waiving its rights, privileges, and defenses, including but not limited to *forum non conveniens*, Airbus would show as follows:

### JURISDICTION AND VENUE

1. Third-Party Plaintiff Airbus is a *société par action simplifiée* organized under the laws of France with its principal place of business in Toulouse-Blagnac, France.

2. Third-Party Defendant Air France is a carrier engaged in the business of commercial air transportation. Air France carries fare-paying passengers on regularly scheduled domestic and international flights. Air France is a foreign corporation organized under the laws of France with its principal place of business in Tremblay-en-France, France. At all times material to this proceeding, Air France has engaged in substantial and not isolated business activity in the State of California on a continuous and systematic basis, including operating daily flights in and out of San Francisco, California.

3. Air France may be served with process at its San Francisco sales office, located at San Francisco International Airport, 1 McDonnell Road, Air France Counter, International Terminal, San Francisco, California 94128.

4. Alternatively, Air France may be served in accordance with the terms of the Hague Convention for the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") entered into at The Hague, Netherlands, on November 15, 1965.

5. Jurisdiction and venue are appropriate in this Court pursuant to Rule 14 of the Federal Rules of Civil Procedure, the Multiparty, Multiforum Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369, and the principles of ancillary, pendent, and supplemental jurisdiction set forth in 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Third-Party Defendant Air France is subject to personal jurisdiction in this District.

**STATEMENT OF FACTS**

7. On May 31, 2009 - June 1, 2009, Air France operated as a common carrier.

8. Air France Flight 447 ("AF 447") was a scheduled commercial flight operated by Air France that departed from Rio de Janeiro-Galeão International Airport, Brazil on May 31, 2009, bound for Paris-Charles de Gaulle Airport, France, aboard an Airbus A330-203 aircraft bearing registration No. F-GZCP (the "Aircraft"). Shortly after 2:15 a.m. on June 1, 2009, AF 447 crashed into the Atlantic Ocean, approximately 650 miles off the coast of Brazil (the "Accident").

9. At all times material to this litigation, Air France owned, operated, and controlled the Aircraft and was solely responsible for operating, maintaining, repairing, inspecting, and servicing the Aircraft and its component parts.

10. At all times material to this litigation, Air France was solely responsible for hiring, training, supervising, and controlling its employees, agents, contractors, and other representatives responsible for the safe conduct of flight operations, including Air France's flight,

cabin, and maintenance crews, and the pilots in command of the Aircraft on June 1, 2009 (the "flight crew").

11. Prior to takeoff from Rio de Janeiro-Galeão International Airport, Air France knew that AF 447's intended flight path would carry it through the Inter-Tropical Convergence Zone, a geographical area of the Atlantic Ocean near the Equator where winds originating in the northern and southern hemispheres come together. Because of its location, the Inter-Tropical Convergence Zone is prone to severe convective weather systems, including intense thunderstorms.

12. Cumulonimbus clusters of the type encountered in the Inter-Tropical Convergence Zone typically feature significant turbulence and electrical activity. Supercooled water and ice crystals are also often present in the upper reaches of such clusters, including at or above 35,000 feet, AF 447's intended cruise altitude. These facts were known to Air France prior to AF 447's departure on May 31, 2009.

13. Radar images available prior to AF 447's departure on May 31, 2009 revealed that powerful cumulonimbus clusters characteristic of the Inter-Tropical Convergence Zone were present on that night. Special weather advisories ("SIGMET," or "Significant Meteorological Information") were issued during the evening of May 31, 2009 for pilots flying through areas along AF 447's intended flight path. These SIGMETs warned pilots of the presence of numerous convective storms in the Inter-Tropical Convergence Zone on that evening, including stationary storms with tops reaching as high as 40,000 feet.

14. The Aircraft was also equipped with weather radar capable of detecting such cumulonimbus clusters. By using the weather radar on board the Aircraft, the storms along AF 447's intended flight path could have been detected and avoided.

15. As demonstrated by the actions of pilots on other flights in the vicinity of AF 447's intended flight path, it was both advisable and feasible to alter course and divert around the stationary cumulonimbus clusters shown on the pre-flight radar images, in the SIGMETs issued on May 31, 2009, and visible on the Aircraft's weather radar.

16. At least three commercial airliners flying similar flight paths to AF 447's on the same night diverted around the cumulonimbus clusters and proceeded safely to their destinations:

(a) Iberia Airlines Flight IB6024 ("Flight IB6024"), an Airbus A340 en route from Rio de Janeiro-Galeão International Airport to Madrid, Spain, encountered severe weather conditions before reaching the TASIL waypoint (a reference point over the Atlantic Ocean approximately 200 kilometers from AF 447's last known position). The Flight IB6024 flight crew chose to divert approximately 30 nautical miles east to avoid cumulonimbus clusters shown on their aircraft weather radar. Flight IB6024 then returned to its intended flight path in clear skies close to the TASIL waypoint.

(b) Air France Flight 459 ("AF 459"), an Airbus A330-203 en route from São Paulo-Guarulhos Airport to Paris-Charles de Gaulle, detected a significant squall line on its aircraft weather radar with an estimated length of 150 nautical miles. The AF 459 flight crew chose to divert approximately 70 to 80 nautical miles east of its intended flight path, and returned to its flight path near the ASEBA waypoint.

(c) Lufthansa Flight LH507 ("Flight LH507"), a Boeing 747-400 en route from São Paulo-Guarulhos Airport to Frankfurt, Germany, detected cumulonimbus clusters on its aircraft weather radar while passing the ORARO waypoint. The Flight LH507 flight crew chose to divert approximately 10 nautical miles west of its intended flight path, and encountered only moderate turbulence.

17. Pre-departure radar images and SIGMETs that clearly indicated the presence of significant cumulonimbus clusters in the Inter-Tropical Convergence Zone (as well as onboard weather radar capable of detecting such clusters) prompted other commercial airliners on or near the same route to divert from their original flights paths. Available evidence from the official French investigation indicates that Air France's dispatch services did not divert the AF 447 flight from the planned route, and "[u]p to the last position report point, transmitted automatically via the ACARS message, the AF447 [pilots] had not deviated from the planned route by more than 1 nautical mile[.]"

18. Among the dangers to safe flight posed by high-altitude flight through cumulonimbus clusters are the presence of supercooled water droplets and ice crystals. Supercooled water droplets and ice crystals can damage various aircraft components. Although ice crystals cannot be detected by radar, it is known to flight crews that they are often found above cumulonimbus clusters like the ones in the Inter-Tropical Convergence Zone on the night of the Accident. For these reasons, pilots are trained to consult their onboard weather radar and other available meteorological data to recognize and avoid such systems.

19. Instruments attached to the aircraft's fuselage collect air pressure information for use by the air data inertial reference unit ("ADIRU") to derive standard altitude and airspeed. Multiple systems on the A330 rely on these altitude and airspeed data to carry out their respective functions.

20. As Air France was aware on June 1, 2009, all airspeed detection systems are inherently subject to temporary obstructions from adverse weather conditions. Transient weather phenomena, including supercooled water droplets and ice crystals of the sort encountered in high-altitude convective systems, can temporarily degrade the aircraft's ability to measure airspeed accurately.

21. As of June 1, 2009, the Aircraft, including its relevant component parts, met or exceeded the applicable certification standards. Nevertheless, Airbus had introduced service bulletins for A330 aircraft (including the Aircraft) in 2007. Despite receiving several relevant service bulletins from Airbus in 2007, Air France failed to retrofit the Aircraft with the latest standards.

22. Because of the AF 447 pilots' decision to fly through the storms indicated on pre-departure radar images, SIGMETs, and the Aircraft's weather radar, the Aircraft may have been exposed to cumulonimbus clusters and associated adverse weather conditions, including significant turbulence and the presence of supercooled water droplets and ice crystals, some of which could lead to temporary—and foreseeable—interruptions in the Aircraft's ability to measure airspeed accurately.

23. Although pilots normally rely on airspeed indications derived by the aircraft, pilots are taught to fly an aircraft safely with unreliable airspeed indications in the cockpit. Pilots are trained to detect unreliable airspeed situations when they occur, and to memorize and follow simple procedures that allow the aircraft to maintain correct airspeed and altitude until accurate airspeed indications are regained. Both the Airbus A330-203 Quick Reference Handbook and Air France's Flight Crew Operating Manual, which are carried with the crew in the cockpit, also provide the procedures for safely managing unreliable speed situations. Because of their importance, the unreliable airspeed procedures in the Airbus A330-203 Quick Reference Handbook are "memory items" that must be learned and memorized by all qualified pilots.

24. Despite the ready availability of these procedures, and despite the requirement that such procedures be memorized, the AF 447 pilots failed to apply the appropriate procedures. As a result, at approximately 2:15 a.m. on June 1, 2009, shortly after entering the area containing

the cumulonimbus clusters, the Aircraft crashed into the high seas of the Atlantic Ocean approximately 650 miles off the coast of Brazil.

25. The AF 447 pilots' failure to follow the correct unreliable airspeed procedures would have contravened both the Airbus A330-203 Quick Reference Handbook and Air France's own Flight Crew Operating Manual and was a proximate cause of the Accident.

26. At all times, the Aircraft responded as commanded by the AF 447 pilots and in accordance with its design.

27. Air France is a learned-, responsible-, sophisticated-, and/or informed-intermediary and user, as those doctrines are construed under the applicable law.

**FIRST CAUSE OF ACTION:**
**CONTRIBUTION**

28. Airbus incorporates by reference every allegation contained in paragraphs 1-27, as if fully set forth here.

29. Plaintiffs assert in the underlying action that Airbus is liable for their alleged damages as a result of Airbus's alleged negligence and/or as a result of alleged defects in the Aircraft.

30. Air France contributed to and/or caused the losses for which Plaintiffs seek damages by, among other things:

(a) Failing to equip the Aircraft with the latest standards;

(b) Failing to properly hire, train, supervise, and control its employees, agents, contractors, and representatives responsible for the safe conduct of flight operations, including pilots, mechanics, contractors, third-party service personnel, flight dispatchers, and others whose careful attention is required to insure safety of flight operations;

(c) Failing to properly train its flight crews and pilots;

(d) Failure of AF 447's dispatch and/or pilots to detect and/or avoid the storm systems indicated on pre-departure radar images, SIGMETs, and the Aircraft's weather radar, thereby jeopardizing the safety of the flight of AF 447;

(e) Failure of AF 447's pilots to properly operate the Aircraft following their decision to fly into the storm systems along their intended flight path; and

(f) Failure of AF 447's pilots to comply with the Air France Flight Crew Operating Manual procedures and/or Airbus Quick Reference Handbook procedures during the flight of AF 447.

31. The actions and/or omissions of Air France were the proximate cause of the Accident.

32. If Airbus is adjudged liable under the applicable law to Plaintiffs for any of their alleged injuries or damages resulting from the Accident, which liability is expressly denied, Airbus is entitled to contribution, under the applicable law, from Air France for the share of liability that the finder of fact apportions against Air France, and for any amounts paid by or on behalf of Airbus in settlement, judgment, or compromise of Plaintiffs' actions and its fees and expenses incurred in these actions, together with attorneys' fees, costs, interest, and such other relief as the Court deems appropriate.

**SECOND CAUSE OF ACTION:**
**INDEMNITY**

33. Airbus incorporates by reference every allegation contained in paragraphs 1-27, as if fully set forth here.

34. Plaintiffs assert in the underlying action that Airbus is liable for their alleged damages as a result of Airbus's alleged negligence and/or as a result of alleged defects in the Aircraft.

35. Air France contributed to and/or caused the losses for which Plaintiffs seek damages by, amongst other things:

(a) Failing to equip the Aircraft with the latest standards;

(b) Failing to properly hire, train, supervise, and control its employees, agents, contractors, and representatives responsible for the safe conduct of flight operations, including pilots, mechanics, contractors, third-party service personnel, flight dispatchers, and others whose careful attention is required to insure safety of flight operations;

(c) Failing to properly train its flight crews and pilots;

(d) Failure of AF 447's dispatch and/or pilots to detect and/or avoid the storm systems indicated on pre-departure radar images, SIGMETs, and the Aircraft's weather radar, thereby jeopardizing the safety of the flight of AF 447;

(e) Failure of AF 447's pilots to properly operate the Aircraft following their decision to fly into the storm systems along their intended flight path; and

(f) Failure of AF 447's pilots to comply with the Air France Flight Crew Operating Manual procedures and/or Airbus Quick Reference Handbook procedures during the flight of AF 447.

36. The actions and/or omissions of Air France were the proximate cause of the Accident.

37. If Airbus is adjudged liable under the applicable law to Plaintiffs for any of their alleged injuries or damages resulting from the Accident, which liability is expressly denied, Airbus is entitled, under the applicable law, to contractual and/or equitable indemnity from Air France for the share of liability, if any, that the finder of fact apportions against Air France, and for any amounts paid by or on behalf of Airbus in settlement, judgment, or compromise of

Plaintiffs' actions and its fees and expenses incurred in these actions, together with attorneys' fees, costs, interest, and such other relief as the Court deems appropriate.

**NOTICE OF THE APPLICABILITY OF THE LAW OF ANOTHER JURISDICTION**

Pursuant to Federal Rule of Civil Procedure 44.1, Airbus gives notice that it may raise issues concerning the applicability of the law of another jurisdiction, including but not limited to the law of France, and reserves the right to assert and plead such other claims and defenses available to it arising out of the application of the substantive laws of another jurisdiction.

**REQUEST FOR JURY TRIAL**

Airbus demands a trial by jury on all issues so triable.

**CONCLUSION AND PRAYER**

WHEREFORE, Airbus S.A.S. respectfully prays that:

(1) Plaintiffs take nothing by reason of their suit, but to the extent the fact-finder awards damages, any award arising from Plaintiffs' claims against Airbus be reduced by that proportion of responsibility adjudged against Air France;

(2) Airbus be awarded, as contribution, all amounts it pays or are paid on its behalf in settlement, judgment, or compromise of Plaintiffs' actions;

(3) Airbus be awarded indemnity for any and all liability in connection with Plaintiffs' claims, including any amounts it pays or are paid on its behalf in settlement, judgment, or compromise of such claims;

(4) Airbus be awarded its costs of Court;

(5) Airbus be awarded its reasonable and necessary attorneys' fees incurred in the defense and prosecution in this action; and

(6) Airbus be awarded such other and further relief to which it shows itself entitled.

Dated: June 14, 2010.

Respectfully submitted,

**HOGAN LOVELLS US LLP**

By: */s/Thad T. Dameris*

Thad T. Dameris
Bruce D. Oakley
Trevor R. Jefferies
David J. Weiner
Christopher M. Odell
700 Louisiana Street, Suite 4300
Houston, Texas 77002
Tel.: (713) 632-1400
Fax: (713) 583-6297

**Counsel for Defendant Airbus S.A.S.**

**Of counsel:**

Norman J. Blears (State Bar. No. 95600)
HOGAN LOVELLS US LLP
525 University Avenue, 4th Floor
Palo Alto, California 94301
Tel.: (650) 463-4000
norman.blears@hoganlovells.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of June 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record or pro se parties identified in the manner specified, either via transmission of Notices of Electronic Filing via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Thad T. Dameris*
Thad T. Dameris