BLANK ROME LLP
Sara L. Chenetz (SBN 206936)
chenetz@blankrome.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: (424) 239-3400
Facsimile: (424) 239-3434

BLANK ROME LLP
Elaine D. Solomon (*admitted pro hac vice*)
solomon@blankrome.com
Laurie Alberts Salita (*admitted pro hac vice*)
salita@blankrome.com
130 North 18th Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

BLANK ROME LLP
Raymond G. Mullady, Jr. (*admitted pro hac vice*)
mullady@blankrome.com
Watergate 600
New Hampshire Avenue, NW
Washington, DC 20037
Telephone: (202) 772-5828
Facsimile: (202) 572-8414

Counsel for Defendant
ROSEMOUNT AEROSPACE INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: AIR CRASH OVER THE MIDATLANTIC ON JUNE 1, 2009<br><br>This Document Relates to:<br><br>*Dardengo v. Honeywell International Inc. et al.*, C 10-4948-CRB | MDL Docket No. 10-2144 CRB<br>Honorable Charles R. Breyer<br><br>**ROSEMOUNT AEROSPACE INC.'S THIRD-PARTY COMPLAINT AGAINST AIRBUS S.A.S. and THALES AVIONICS, S.A.**<br><br>**DEMAND FOR JURY TRIAL** |

ROSEMOUNT'S THIRD-PARTY COMPLAINT
CASE NO. CV 10-5513 CRB
MDL NO. 10-2144 CRB

-1-

103576.00983/22006642v.1

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Rosemount Aerospace Inc. (Rosemount) brings this Third-Party Complaint against Airbus S.A.S. ("Airbus") and Thales Avionics, S.A. ("Thales"). Rosemount brings this Third-Party Complaint in accordance with the requirements of Rule 14 and to protect its rights, but does not, by filing this Third-Party Complaint, concede or agree that this is a convenient or appropriate forum for resolving Rosemount's claims against Airbus and Thales or any other claims arising from the facts set forth below. Subject to and without waiving its rights, privileges and defenses, including but not limited to *forum non conveniens*, Rosemount alleges as follows:

### I.    The Parties

1. Rosemount is a United States corporation organized and existing under the laws of the State of Delaware.

2. Airbus S.A.S. is a *société par action simplifiéé* duly organized and existing under the laws of France, with its principal place of business in Toulouse, France. Defendant Airbus designs, manufactures, assembles, markets, and sells commercial aircraft around the world, including the aircraft involved in the Air France Flight 447 crash.

3. This Court has general jurisdiction over Airbus because, on information and belief, Airbus has conducted and does conduct continuous and systematic business within this State.

4. Thales Avionics, S.A. is a corporate entity duly organized and existing under the laws of France, with its principal place of business in Neuilly-sur-Seine, France. Thales designs, manufactures, assembles, markets, and sells aerospace systems and products, including systems that were part of the aircraft involved in the Air France Flight 447 crash.

5. This Court has general jurisdiction over Thales because, on information and belief, Thales has conducted and does conduct continuous and systematic business within this State.

### II.    Jurisdiction and Venue

6. This Court has jurisdiction over Rosemount's claims against Airbus and Thales pursuant to 28 U.S.C. § 1367(a) because they are so related to plaintiffs' claims against Rosemount that they form part of the same case or controversy under Article III of the U.S. Constitution. The Court also has jurisdiction pursuant to 28 U.S.C. § 1369(a), in that the parties

are minimally diverse, Rosemount's claims arise from a single accident involving the deaths of more than 75 persons, and a substantial part of the accident occurred outside of France, where Airbus and Thales reside.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Airbus is subject to personal jurisdiction in this District and there is no district in which the action may otherwise be brought.

### III.    General Allegations

8. In their Complaint, plaintiffs claim damages for deaths allegedly arising from the crash of Air France Flight 447 on June 1, 2009 (the "Accident").  Plaintiffs allege, in part, that the Accident was caused by defects in the subject aircraft and certain of its components, including certain products alleged to have been manufactured by Rosemount.  To the extent those allegations are directed to Rosemount, Rosemount denies them.

9. On June 1, 2009, the subject aircraft was being operated by Air France as Flight 447 en route from Rio de Janeiro, Brazil to Paris, France ("Flight 447") when it crashed.

10. Airbus manufactured, assembled, marketed, and sold the subject aircraft and was responsible for ensuring the airworthiness of the subject aircraft and its component parts at the time it left Airbus's custody and control.

11. Upon information and belief, Thales manufactured, assembled, marketed, and sold components of the subject aircraft, including but not limited to the pitot tubes and software installed on the air data inertial reference units (ADIRUs) and flight control computers and was responsible for ensuring the airworthiness of those components at the time they left Thales' custody and control.

12. A few hours into Flight 447, the subject aircraft encountered powerful thunderstorm activity, likely including heavy and/or severe precipitation, electrical activity, ice and turbulence.  Approximately three hours into the flight, air traffic controllers lost contact with Flight 447.  Debris from Flight 447 was found floating in the high seas of the Atlantic Ocean on June 6, 2009.

ROSEMOUNT'S THIRD-PARTY COMPLAINT
CASE NO. CV 10-5513 CRB
MDL NO. 10-2144 CRB

-3-

103576.00983/22006642v.1

## COUNT ONE

**Indemnity, Equitable Indemnity, and/or Contribution against Airbus S.A.S.**

13. Rosemount restates and realleges the allegations contained in paragraphs 1 through 12 above as if fully set forth here.

14. Plaintiffs allege that the subject aircraft was in a defective and unreasonably dangerous condition at the time it departed on Flight 447. They allege that the component parts of the subject aircraft were defective and unreasonably dangerous due to design and manufacturing defects and the failure to warn Air France, plaintiffs' decedents and others of these alleged defects. Plaintiffs further allege that, on information and belief, there were alternative, safer designs for these component parts that would have prevented or significantly reduced the risk of injury and death when used as part of a commercial aircraft.

15. Airbus manufactured, assembled, marketed, and sold the subject aircraft and was responsible for ensuring the airworthiness of the subject aircraft and its component parts at the time it left Airbus's custody and control.

16. Because it manufactured, assembled, marketed, and sold the subject aircraft, Airbus is strictly liable for any defective and unreasonably dangerous condition of the subject aircraft and its components as alleged in plaintiffs' Complaint and for any harm or damage proximately caused by such defects.

17. Airbus breached its duties to plaintiffs and their decedents by failing to exercise due care in the design, manufacture, or assembly of the subject aircraft to ensure the airworthiness of the subject aircraft and its component parts and by failing to warn Air France and/or plaintiffs' decedents of the defective and unreasonably dangerous condition of the subject aircraft, or that such defects would result in serious risk of injury and death.

18. Rosemount was not negligent, at fault, or otherwise culpable in any manner for the Accident, including but not limited to in the design, manufacture or testing of any component part(s) of the subject aircraft manufactured by Rosemont. In the alternative, any negligence, fault, or other culpable conduct by Rosemount, which negligence, fault, or other culpable conduct

Rosemount expressly denies, was secondary and passive to that of Airbus and/or persons for whose conduct Airbus is liable.

19. Accordingly, the sole, or in the alternative a, proximate cause of the Accident was the negligent acts or omissions, active fault, or other culpable conduct of Airbus and/or persons for whose conduct Airbus is liable.

20. In addition to the claims against Rosemount alleged in plaintiffs' Complaint in this action, Rosemount may in the future be named as a defendant in other actions arising out of the Accident.

21. Should Rosemount be found liable to plaintiffs in this action, or to plaintiffs in any other action arising from the Accident, notwithstanding Rosemount's denial of liability, then Rosemount is entitled to complete indemnity or equitable indemnity from Airbus. Alternatively, Rosemount is entitled to equitable indemnity or contribution from Airbus for any damages amount in excess of Rosemount's proportionate share of the common liability, if any.

**WHEREFORE,** Third-Party Plaintiff Rosemount respectfully prays for the following relief:

(a) Judgment decreeing that Airbus is solely, primarily, and/or actively liable for the Accident and that Rosemount's liability, if any, is secondary and/or passive to that of Airbus; and/or

(b) Judgment decreeing the respective and proportionate fault of Airbus and Rosemount, if any, in causing the Accident and resulting damages; and/or

(c) Judgment against Airbus in an amount to be proven at trial for all damages arising out of the Accident that Rosemount is or may become liable to pay; and/or

(d) Judgment against Airbus in an amount to be proven at trial for all damages arising out of the Accident that Rosemount is or may become liable to pay in excess of Rosemount's proportionate share of the common liability, if any; and/or

(e) All other and further relief as the Court deems necessary, just and proper.

ROSEMOUNT'S THIRD-PARTY COMPLAINT
CASE NO. CV 10-5513 CRB
MDL NO. 10-2144 CRB

-5-

103576.00983/22006642v.1

# COUNT TWO

**Indemnity, Equitable Indemnity, and/or Contribution against Thales Avionics, S.A.**

22. Rosemount restates and realleges the allegations contained in paragraphs 1 through 21 above as if fully set forth here.

23. Plaintiffs allege that the subject aircraft was in a defective and unreasonably dangerous condition at the time it departed on Flight 447. They allege that the component parts of the subject aircraft were defective and unreasonably dangerous due to design and manufacturing defects and the failure to warn Airbus, Air France, plaintiffs' decedents and others of these alleged defects. Plaintiffs further allege that, on information and belief, there were alternative, safer designs for these component parts that would have prevented or significantly reduced the risk of injury and death when used as part of a commercial aircraft.

24. Plaintiffs allege that "the on-board software installed on the flight control computers, ADIRUs, and other components failed to adequately filter out inaccurate data and provided erroneous information." Plaintiffs also allege that "erroneous data concerning airspeed" caused or contributed to the Accident.

25. Upon information and belief, Thales manufactured, assembled, marketed, and sold components of the subject aircraft, including but not limited to the pitot tubes, which measure airspeed, and software installed on the ADIRUs and flight control computers and was responsible for ensuring the airworthiness of those components at the time they left Thales' custody and control.

26. Thales is strictly liable for the defective and unreasonably dangerous condition of the subject aircraft and its components as alleged in plaintiffs' Complaint and for any harm or damage proximately caused by such defects.

27. Thales breached its duties to plaintiffs and their decedents by failing to exercise due care in the design, manufacture, or assembly of components of the subject aircraft to ensure the airworthiness of the subject aircraft and those component parts and by failing to warn Airbus, Air France and/or plaintiffs' decedents of the defective and unreasonably dangerous condition of those components, or that such defects would result in serious risk of injury and death.

28. Rosemount was not negligent, at fault, or otherwise culpable in any manner for the Accident, including but not limited to in the design, manufacture or testing of any component part(s) of the subject aircraft manufactured by Rosemont. In the alternative, any negligence, fault, or other culpable conduct by Rosemount, which negligence, fault, or other culpable conduct Rosemount expressly denies, was secondary and passive to that of Thales and/or persons for whose conduct Thales is liable.

29. Accordingly, the sole, or in the alternative a, proximate cause of the Accident was the negligent acts or omissions, active fault, or other culpable conduct of Thales and/or persons for whose conduct Thales is liable.

30. In addition to the claims against Rosemount alleged in plaintiffs' Complaint in this action, Rosemount may in the future be named as a defendant in other actions arising out of the Accident.

31. Should Rosemount be found liable to plaintiffs in this action, or to plaintiffs in any other action arising from the Accident, notwithstanding Rosemount's denial of liability, then Rosemount is entitled to complete indemnity or equitable indemnity from Thales. Alternatively, Rosemount is entitled to equitable indemnity or contribution from Thales for any damages amount in excess of Rosemount's proportionate share of the common liability, if any.

**WHEREFORE,** Third-Party Plaintiff Rosemount respectfully prays for the following relief:

(a) Judgment decreeing that Thales is solely, primarily, and/or actively liable for the Accident and that Rosemount's liability, if any, is secondary and/or passive to that of Thales; and/or

(b) Judgment decreeing the respective and proportionate fault of Thales and Rosemount, if any, in causing the Accident and resulting damages; and/or

(c) Judgment against Thales in an amount to be proven at trial for all damages arising out of the Accident that Rosemount is or may become liable to pay; and/or

      (d)      Judgment against Thales in an amount to be proven at trial for all damages arising out of the Accident that Rosemount is or may become liable to pay in excess of Rosemount's proportionate share of the common liability, if any; and/or

      (e)      All other and further relief as the Court deems necessary, just and proper.

## JURY TRIAL DEMAND

Rosemount demands a jury trial of all claims, counterclaims, cross-claims, and third-party claims, if any, to the fullest extent allowable by applicable law and which do not deprive this Court of jurisdiction over the subject matter of any claim or the person of any party.

## NOTICE OF THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION

Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Rosemount gives notice that it may raise issues concerning the applicability of the laws of a foreign country or foreign countries, including but not limited to the law of France.

Dated: March 29, 2011

BLANK ROME LLP

By:   /s/ Elaine D. Solomon  
        Elaine D. Solomon

Elaine D. Solomon  
Laurie Alberts Salita  
solomon@blankrome.com  
salita@blankrome.com  
130 North 18th Street  
Philadelphia, Pennsylvania 19103  
Telephone: (215) 569-5500

Raymond G. Mullady, Jr.  
mullady@blankrome.com  
Watergate 600  
New Hampshire Avenue, NW  
Washington, DC 20037  
Telephone: (202) 772-5828

Counsel for Defendant  
ROSEMOUNT AEROSPACE INC.

## Certificate of Service

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 29th day of March, 2011, with a copy of this document via the Court's CM/ECF system. I certify that all parties who have appeared in this case are represented by counsel who are CM/ECF participants. Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on this same date.

    /s/ Michelle L. Grams
        Michelle L. Grams

ROSEMOUNT'S THIRD-PARTY COMPLAINT
CASE NO. CV 10-5513 CRB
MDL NO. 10-2144 CRB

-9-

103576.00983/22006642v.1