1   TROY SAURO (SBN 224097)
2   PERKINS COIE LLP
    Four Embarcadero Center, Suite 2400
3   San Francisco, CA  94111-4131
    Telephone:  415.344.7000
4   Facsimile:  415.344.7050
    TSauro@perkinscoie.com
5

6   JOHN DILLOW (SBN 50403) (*Pro Hac Vice*)
    V.L. WOOLSTON (*Pro Hac Vice*)
7   PERKINS COIE LLP
    1201 Third Avenue, Suite 4800
8   Seattle, WA 98101
    Telephone:  (206) 359-8000
9   Facsimile:  (206) 359-9000
    JDillow@perkinscoie.com
10  VWoolston@perkinscoie.com

11
    Attorneys for Defendant
12  INTEL CORPORATION

13  Counsel for the other moving parties are
    listed on the signature page
14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17              SAN FRANCISCO DIVISION

18

19  In re: AIR CRASH OVER THE              MDL Docket No. 10-2144 CRB
    MIDATLANTIC ON JUNE 1, 2009
20  _____        **DEFENDANTS' REPLY IN SUPPORT**
                                           **OF JOINT MOTION TO DISMISS ON**
21  This Document Relates to:              **THE GROUND OF FORUM NON**
                                           **CONVENIENS**
22
    *Dardengo et al. v. Honeywell International*
23  *Inc., et al.*, C 10-4948-CRB; and     Hearing Date:   June 3, 2011
    *Guennoon et al. v. Honeywell International*  Time:           10:00 a.m.
24  *Inc., et al.*, C 10-5513-CRB          Judge:          Hon. Charles R. Breyer
                                           Place:          Courtroom 8, 19th Floor
25

26

27

28

1

**TABLE OF CONTENTS**

2

I.   Introduction and Summary of Argument ........................................................... 1

II.  Argument ......................................................................................................... 3

    A.   France Is an Available and Adequate Forum ......................................... 3

        1.   Defendants Do Not Bear a Heightened Burden of "Clear Proof" ............... 3

        2.   The Court Need Not Delve into the Intricacies of French Jurisdiction ................................................................................. 6

            a.   The *Forum Non Conveniens* Doctrine Does Not Require French Courts to Recognize This Exact Suit ................................. 6

            b.   Plaintiffs Cannot Unilaterally Make French Courts Unavailable ........................................................................ 8

            c.   Defendants' Stipulation to Submit to French Jurisdiction and a Conditional Dismissal Satisfy the Availability Requirement ...................................................................... 10

        3.   French Courts Would Hear Plaintiffs' Claims Against the U.S. Defendants ............................................................................... 11

            a.   French Courts May Not Dismiss Plaintiffs' Claims *Sua Sponte* ............................................................................... 11

            b.   French Courts Have Jurisdiction Under Article 24 of Regulation 44/2001 ......................................................... 13

            c.   French Courts Have Jurisdiction Under Traditional Jurisdiction Rules Governing Accidents on the High Seas........... 15

            d.   French Courts Will Have Jurisdiction Through Impleader or Joinder ......................................................................... 15

        4.   French Courts Are Concededly Adequate to Hear Plaintiffs' Claims ...... 15

    B.   Private and Public Interest Factors Strongly Favor Dismissal............................ 16

III. Dismissal in Favor of Brazil Is Not Before the Court........................................ 16

IV.  Conclusion ................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguinda v. Texaco, Inc.*,
303 F.3d 470 (2d Cir. 2002) ........................................................................... 5, 8

*Canales Martinez v. Dow Chemical Co.*,
219 F. Supp. 2d 719 (E.D. La. 2002) ...................................................................... 4

*Castillo v. Shipping Corp. of India*,
606 F. Supp. 497 (S.D.N.Y. 1985) .......................................................................... 9

*Ceramic Corp. of America v. Inka Maritime Corp.*,
1 F.3d 947 (9th Cir. 1993) ...................................................................................... 4

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
918 F.2d 1446 (9th Cir. 1990) ............................................................................ 3, 7

*Copitas v. Fishing Vessel Alexandros*,
20 Fed. Appx. 744 (9th Cir. 2001) ..................................................................... 3, 10

*Dattner v. Conagra Foods, Inc.*,
91 Fed. Appx. 179 (2d Cir. 2004) ......................................................................... 16

*Dole Food Co., Inc. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ................................................................................ 5

*Ford v. Brown*,
319 F.3d 1302 (11th Cir. 2003) ............................................................................ 10

*Gschwind v. Cessna Aircraft Co.*,
161 F.3d 602 (10th Cir. 1998) .............................................................................. 16

*Gutierrez v. Advanced Medical Optics, Inc.*,
No. 09-55, ___ F.3d ____, 2011 WL 1312783 (9th Cir. Apr. 7, 2011) .......................... passim

*In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*,
821 F.2d 1147 (5th Cir. 1987) .............................................................................. 10

*In re Bridgestone/Firestone, Inc.*,
420 F.3d 702 (7th Cir. 2005) ........................................................................ 5, 9, 13

*In re Compania Naviera Joanna v. Koninklijke Boskalis Westminster NV*,
569 F.3d 189 (4th Cir. 2009) .................................................................................. 9

*Leon v. Million Air, Inc.*,
251 F.3d 1305 (11th Cir. 2001) .............................................................................. 5

*Lueck v. Sundstrand Corp.,*
    236 F.3d 1137 (9th Cir. 2001).........................................................................................passim

*MBI Group, Inc. v. Credit Foncier du Cameroun,*
    616 F.3d 568 (D.C. Cir. 2010) ...................................................................................... 9, 13

*Phoenix Canada Oil Co. v. Texaco, Inc.,*
    78 F.R.D. 445 (D. Del. 1978)........................................................................................... 4, 5

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ......................................................................................................passim

*Piscetta v. Noble Drilling Corp.,*
    347 Fed. Appx. 27 (5th Cir. 2009) ................................................................................... 7, 8

*Tang v. Synutra Int'l, Inc.,*
    No. DKC 09-0088, 2010 WL 1375373 (D. Md. Mar. 29, 2010) ....................................... 7, 8

*Tuazon v. Reynolds Tobacco Co.,*
    433 F.3d 1163 (9th Cir. 2006)............................................................................................... 3

*Veba-Chemie A.G. v. M/V Getafix,*
    711 F.2d 1243 (5th Cir. 1983)............................................................................................... 9

*Wong v. PartyGaming Ltd.,*
    589 F.3d 821 (6th Cir. 2009) ............................................................................................... 8

## I.     Introduction and Summary of Argument

In early May 2011, the French Bureau d'Enquêtes et d'Analyses ("BEA") recovered the cockpit voice recorder and flight data recorder from the wreckage of Air France Flight 447.  Ex. 1: News Articles.[1]  As the Court previously observed, these black boxes likely contain the most important information concerning the cause of the June 1, 2009 crash.  *See* D.E. 766: Order Granting FNC Dismissal at 14 n.7 (Oct. 4, 2010) ("Order").  The recorders were transported to France and are being analyzed by the BEA.  Ex. 1: News Articles.  Preliminary analysis of the recorders suggests that mechanical malfunction did not cause the accident.  *Id.*

Four cases on behalf of five passengers have been recently filed in France against Air France and Airbus.  Dillow Reply Decl. ¶ 3 & Ex. 2: French Complaint.  Because Plaintiffs can join these French actions and implead the U.S. Defendants, there is no question that a French court would have jurisdiction over the *Dardengo* and *Guennoon* actions.

Finally, on May 20, 2011, the only two American Plaintiffs—the Harrises—settled with Air France and dismissed all claims against all defendants.  D.E. 862: Stip. & Order of Dismissal (May 20, 2011).  As a result, no American Plaintiffs or decedents remain before the Court.

These latest developments confirm that *Dardengo* and *Guennoon* are more conveniently resolved in France, where all the relevant evidence and interested parties may be brought before one court.  Plaintiffs' response to Defendants' motion to dismiss ignores the BEA investigation.  It also ignores the French prosecutors' filing of criminal charges against French companies Air France and Airbus.  And it further ignores the dozens of other cases arising out of the AF 447 accident that either were originally filed in France or have been dismissed by this Court for re-filing in France.  Even more tellingly, Plaintiffs' response tacitly concedes that the public and private interest factors favor dismissal, instead inviting the Court to examine Defendants' motion stripped of the pragmatic concerns central to the *forum non conveniens* inquiry.

Plaintiffs' response boils down to a single proposition of law that is as remarkable as it is erroneous.  Plaintiffs contend that merely by dropping two French defendants—parties that are

---

[1] Exhibits are attached to the Reply Declaration of John Dillow, filed herewith.

1   central to the accident inquiry and to the legal proceedings in France—they can unilaterally

2   eliminate this Court's discretion to grant a *forum non conveniens* motion on grounds that France

3   is no longer an "available" forum.  The Ninth Circuit squarely rejected that position in *Lueck v.*

4   *Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001).  As a matter of law, a foreign forum is

5   "available" if the plaintiffs have a remedy in that forum for their alleged injury—whether or not

6   the same defendants can be sued there.  *Id.* at 1143.  Plaintiffs' strained, semantic distinction

7   between "adequate" and "available" forums cannot save the day.

8         Plaintiffs cannot succeed with their efforts to manipulate jurisdiction for another reason as

9   well.  It is well settled that a party may not, through unilateral action, deprive a foreign forum of

10  jurisdiction.  Contrary to Plaintiffs' assertion, the cases establishing this principle do not require

11  "bad faith."  Rather, they require only what Plaintiffs have engaged in here: purposeful conduct

12  (here the strategic decision not to name French defendants) designed to effect an end-run around

13  jurisdiction in the foreign forum.

14        In any event, France is an "available" forum even if the Court ignores Plaintiffs' efforts to

15  deprive French courts of jurisdiction and even if the Court assumes that Plaintiffs must have a

16  remedy in France against these particular Defendants.  To begin with, Defendants are not, as

17  Plaintiffs suggest, required to establish "clear proof" of French jurisdiction before the Court can

18  dismiss the case.  That argument is based on a distortion of a footnote in *Piper Aircraft Co. v.*

19  *Reyno*, 454 U.S. 235 (1981), and it has never been accepted by the Ninth Circuit.  Furthermore,

20  not a single European or French case supports Plaintiffs' interpretation of the relevant statutes and

21  regulations.  By contrast, numerous cases and scholarly texts support the conclusion of retired

22  French Supreme Court Justice Jean-Paul Béraudo that a French court could and would exercise

23  jurisdiction over the *Dardengo* and *Guennoon* actions.  If the Court is worried about the slight

24  possibility that the French courts would refuse jurisdiction, Defendants have already stipulated to

25  conditioning the dismissal on a French court's acceptance of jurisdiction.

26        The *Dardengo* and *Guennoon* actions should be dismissed.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.     Argument

### A.     France Is an Available and Adequate Forum

#### 1.     Defendants Do Not Bear a Heightened Burden of "Clear Proof"

Defendants' opening brief demonstrated that France is an available and adequate forum in multiple ways.  France is available because it offers Plaintiffs a remedy for their alleged injuries, regardless of whether Plaintiffs can re-file the exact same complaints in that forum.  *See Lueck*, 236 F.3d at 1143.  In accordance with *Gutierrez v. Advanced Medical Optics, Inc.*, No. 09-55, ___ F.3d ____, 2011 WL 1312783 (9th Cir. Apr. 7, 2011), *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446 (9th Cir. 1990), and *Copitas v. Fishing Vessel Alexandros*, 20 Fed. Appx. 744 (9th Cir. 2001), Defendants stipulated to accept French jurisdiction and even invited the Court to enter a conditional dismissal just in case the French courts refused jurisdiction.  Finally, Defendants provided a thorough analysis of French law, supported by retired French Supreme Court Justice Jean-Paul Béraudo, demonstrating several bases on which a French court could and would hear complaints by the *Dardengo* and *Guennoon* Plaintiffs against these Defendants even if those Plaintiffs persisted in refusing to name the French companies at the center of this case.

In their desperation to maintain their actions in an inconvenient forum, Plaintiffs urge the Court adopt a new standard requiring "clear proof" that France is an available forum.  But that standard is unsupported by precedent and is diametrically opposed to the point of the *forum non conveniens* doctrine.  Plaintiffs rely on a footnote from the Supreme Court's decision in *Piper Aircraft Co. v. Reyno*, but all that footnote said was that "[i]n rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied."  454 U.S. at 255 n.22.  Plaintiffs twist *Piper*'s cautionary note about a "clearly unsatisfactory" remedy into a standard purportedly requiring defendants to offer "clear proof" that the foreign forum is available.  D.E. 846: Pls.' Resp. at 6 ("*Piper Aircraft ...*stand[s] for the proposition that the Defendants must clearly prove the availability of France as a forum for the *Dardengo* and *Guennoon* actions.").  *Piper* says no such thing, and the Ninth Circuit has never imposed such a heightened standard,

1    either.  *See, e.g.*, *Tuazon v. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006)

2    (commenting that the test for availability is "easy to pass.").  Requiring "clear proof" of

3    availability is inconsistent with Ninth Circuit precedent using return-jurisdiction clauses to

4    address uncertain foreign jurisdiction.  *E.g.*, *Gutierrez*, ___ F.3d ____, 2011 WL 1312783, at *6.

5    Moreover, Plaintiffs' demand for clear proof of availability under "a particular provision of

6    foreign law," D.E. 846: Pls.' Resp. at 21, is directly contrary to the point of the *forum non*

7    *conveniens* doctrine, which, according to both the Supreme Court and the Ninth Circuit, is

8    "'designed in part to help courts avoid conducting complex exercises in comparative law.'"

9    *Lueck*, 236 F.3d at 1144 (quoting *Piper*, 454 U.S. at 251).  Plaintiffs' unfounded standard must be

10   rejected.

11            The other cases cited by Plaintiffs also do not support a "clear proof" standard.  To the

12   contrary, they fit well within the pattern of authorities discussed in Defendants' opening brief and

13   illustrate by contrast why dismissal is appropriate here.  *See* D.E. 834: Defs.' Mot. at 11 n.7.

14   Plaintiffs' cases either found an affirmative bar to jurisdiction in the foreign forum, involved

15   defendants who refused to consent to jurisdiction in the foreign forum, or suffered from a total

16   absence of evidence that the foreign forum would hear the case.  The Court faces no such

17   difficulties dismissing the *Dardengo* and *Guennoon* actions.

18            In particular, unlike *Ceramic Corp. of America v. Inka Maritime Corp.*, 1 F.3d 947, 949

19   (9th Cir. 1993), *Phoenix Canada Oil Co. v. Texaco, Inc.*, 78 F.R.D. 445, 456 (D. Del. 1978), and

20   *Canales Martinez v. Dow Chemical Co.*, 219 F. Supp. 2d 719, 725 (E.D. La. 2002), no forum

21   selection clause or statute bars the French courts from hearing the *Dardengo* and *Guennoon* cases.

22            Furthermore, contrary to Plaintiffs' representation, *Ceramic* did not address a situation in

23   which it was "unclear whether the proposed alternative forum would exercise jurisdiction," D.E.

24   846: Pls.' Resp. at 4.  The Ninth Circuit specifically found it "*uncontroverted* that a Japanese

25   court would dismiss Ceramic's action on its own motion."  *Ceramic*, 1 F.3d at 949 (emphasis

26   added).  That is not the case here.

27            Plaintiffs' reliance on *Phoenix Canada* is similarly unavailing.  There the district court

28   addressed an Ecuadorian statute affirmatively barring Ecuadorian courts from hearing a claim

1   previously filed elsewhere. 78 F.R.D. at 456. No such statute would bar Plaintiffs' claims in

2   France. Plaintiffs also fail to disclose that at least two circuits have since reached the opposite

3   conclusion with respect to similar Ecuadorian statutes: Both circuits held that a conditional

4   dismissal was sufficient to establish availability for *forum non conveniens* purposes. *Aguinda v.*

5   *Texaco, Inc.*, 303 F.3d 470, 477 (2d Cir. 2002); *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1313

6   (11th Cir. 2001). Nor did the Supreme Court rely upon *Phoenix Canada*'s analysis of whether the

7   Ecuadorian forum would accept jurisdiction, as argued by Plaintiffs, D.E. 846: Pls.' Resp. at 4

8   n.1. *Piper* merely gave a *cf.* citation to *Phoenix Canada* when discussing the "remedy offered by

9   the other forum," and even then it referred to *Phoenix Canada*'s holding that "there [was] no

10  generally codified Ecuadorian legal remedy for the unjust enrichment and tort claims asserted."

11  *Piper*, 454 U.S. at 255 n.22. *Phoenix Canada*, therefore, is factually distinct, legally discredited,

12  and does not bear the imprimatur of the Supreme Court.

13          Plaintiffs also mislead in suggesting that *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th

14  Cir. 2002), adopted a "clear proof" standard. The *Dole Food* court did observe in passing that it

15  was "unclear whether there [was] an alternative forum in the Netherlands" because of concerns

16  about personal jurisdiction over a defendant who had not agreed to submit to Dutch jurisdiction.

17  *Id.* at 1118. But that is not an issue here at all. Defendants have stipulated to waive service and

18  appear in France. D.E. 834: Defs.' Mot. at 24 n.10. In any event, the Ninth Circuit did not decide

19  the case based on those doubts: It also noted that the defendants there had not agreed to waive

20  their statute-of-limitations defenses and found the defendants' proof on the private and public

21  interest factors lacking. *Dole Food*, 303 F.3d at 1118.

22          Finally, the district court in *In re Bridgestone/Firestone, Inc.* had no evidence that the

23  foreign forum was available because it found the defendants' witnesses incredible: One expert

24  had not read the statute at issue, and the other expert represented the defendant in the foreign

25  forum. 190 F. Supp. 2d 1125, 1131-32 (S.D. Ind. 2002). By contrast, Justice Béraudo has

26  offered substantial and well-reasoned support for the conclusion that a French court would

27  exercise jurisdiction over the *Dardengo* and *Guennoon* cases. *See generally* D.E. 835: Béraudo

28

Decl.[2]  Indeed, if Plaintiffs simply prosecute the allegations in their complaints and reassert

claims against French companies Airbus and Thales Avionics S.A., jurisdiction in France is

beyond dispute.  *See* D.E. 766: Order at 12-13.  Thus, the *Dardengo* and *Guennoon* matters are

much more like *In re Ford Motor Co.*, cited in Defendants' opening brief, which involved dueling

expert opinions regarding availability and concluded that "a return-jurisdiction clause must weigh

heavily in favor of granting the FNC motion."  591 F.3d 406, 414 (5th Cir. 2009).

### 2.   The Court Need Not Delve into the Intricacies of French Jurisdiction

#### a.   The *Forum Non Conveniens* Doctrine Does Not Require French Courts to Recognize This Exact Suit

Under controlling Ninth Circuit precedent, a foreign forum satisfies the threshold *forum*

*non conveniens* inquiry so long as it provides relief for the plaintiffs' alleged injuries, regardless

of whether the forum permits claims against the defendants to the U.S. litigation.  *Lueck*, 236 F.3d

at 1143.  This is the clear holding of *Lueck*, which affirmed *forum non conveniens* dismissal to a

forum where the plaintiffs could not pursue tort claims against any U.S. defendant.  *Id.*  Indeed,

this was how the parties to *Lueck* themselves framed the issue.  As Defendants noted in their

opening brief and Plaintiffs ignored in their response, the *Lueck* plaintiffs made the exact same

argument Plaintiffs make here.  *See* Brief of Appellant, No. 99-15961, 2000 WL 33996889, at

*15 (Mar. 21, 2000), *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) (arguing that

"[t]he proper question is whether plaintiffs have an adequate remedy against *these* defendants—

not just some remedy in the abstract or against some other possible defendants.").  The Ninth

Circuit rejected the plaintiffs' argument in *Lueck*, 236 F.3d at 1143, and this Court should do the

same here.

Although the Court previously recognized that *Lueck* is closely analogous, D.E. 766:

Order at 11, Plaintiffs contend that *Lueck* has "no relevance" and "no application" here because

---

[2] Plaintiffs' repeated attempts to smear Justice Béraudo's credibility fail on the merits, as discussed below.  More fundamentally, Plaintiffs' harping on the issue of expert witness credibility only draws attention to the fact that their own expert, Professor Gaudemet-Tallon, admittedly reversed her published opinion only days after being retained by Plaintiffs.  D.E. 795-2: Gaudemet-Tallon Dep. 75-77 (Dec. 29, 2010); D.E. 795-3: H. Gaudemet-Tallon, *Compétence et exécution des jugements en Europe*, op. 164. (4th ed. 2010).

the Ninth Circuit characterized subject matter jurisdiction as a question of "adequacy" rather than "availability."  D.E. 846: Pls.' Resp. at 8.  This is a semantic distinction without a difference. Courts frequently analyze "availability" and "adequacy" together.  *See*, *e.g.*, *Piper*, 454 U.S. at 255 n.22; *Gutierrez*, ___ F.3d ___, 2011 WL 1312783, at *2; *Contact Lumber*, 918 F.2d at 1450. Here, as in *Lueck*, there is no question that the French courts would have personal jurisdiction over the U.S. Defendants.  Defendants have stipulated as much.  D.E. 834: Defs.' Mot. at 24 n.10. The only question is whether French courts would exercise *subject matter* jurisdiction over the Plaintiffs' claims as formulated in the *Dardengo* and *Guennoon* complaints.  That is a moot point after *Lueck* because France unquestionably affords relief for Plaintiffs' claims of wrongful death and associated loss.  D.E. 766: Order at 12-13.  France thus provides an adequate and available forum regardless of whether Plaintiffs can assert claims against solely U.S. Defendants.  *See Lueck*, 236 F.3d at 1143-44.  Plaintiffs' response fails even to acknowledge that Plaintiffs can establish jurisdiction in France over all the U.S. defendants simply by naming either of the French companies central to their allegations of airplane and pitot tube defects.  Because Plaintiffs can seek relief from the full panoply of U.S. and French defendants in France, the *Dardengo* and *Guennoon* cases provide an even stronger case for dismissal than *Lueck*.

Nor is the Ninth Circuit alone in adopting the *Lueck* rule.  The Fifth Circuit and the District of Maryland also have held that a foreign forum satisfies the threshold *forum non conveniens* inquiry if it affords relief for the plaintiffs' alleged injuries, even if that relief must be sought from non-parties.  Plaintiffs' response relegates these cases to a footnote and skates over their analysis.  *See* D.E. 846: Pls.' Resp. at 8 n.2.  For example, in *Piscetta v. Noble Drilling Corp.*, 347 Fed. Appx. 27, 31 (5th Cir. 2009), the court determined that Brazil was an available forum *despite* uncertainty over whether the U.S. defendants were subject to jurisdiction there. Similarly Plaintiffs ignore the alternative basis for the decision in *Tang v. Synutra Int'l, Inc.*, No. DKC 09-0088, 2010 WL 1375373, at *10 (D. Md. Mar. 29, 2010), which found China to be an adequate, available forum because a government compensation scheme provided relief for the alleged injuries.  Again, because Plaintiffs can seek recovery from U.S. Defendants as well as

1   others in France, the *Dardengo* and *Guennoon* cases satisfy the threshold *forum non conveniens*

2   inquiry even more readily than *Piscetta* or *Tang* did.

3               **b.       Plaintiffs Cannot Unilaterally Make French Courts Unavailable**

4           Defendants' opening brief also demonstrated that Plaintiffs cannot bind the Court's hands

5   by deliberately choosing to make a French forum unavailable by dropping all their claims against

6   French defendants.  Plaintiffs' response, buried in a footnote, asserts that Plaintiffs have an

7   absolute right to plead their way out of *forum non conveniens* dismissal.  D.E. 846: Pls.' Resp. at

8   9 n.4.  That argument fails for several reasons.

9           As an initial matter, Plaintiffs cite no *forum non conveniens* case law in support of their

10  position.  Instead, they rely on cases analyzing federal subject matter jurisdiction.  But whether a

11  plaintiff can plead around federal jurisdiction is a fundamentally different issue that turns on strict

12  statutory and constitutional limitations on federal courts' subject matter jurisdiction.  Moreover,

13  state and federal courts located in the same geographic area typically have equal access to

14  evidence and witnesses and equal interest in the subject of the litigation.  The *forum non*

15  *conveniens* doctrine, by contrast, is discretionary and is premised on the notion that a plaintiff is

16  *not* the unqualified master of his complaint:  A plaintiff's choice of forum may be rejected where

17  it poses an undue inconvenience to the court and the parties.  *Piper*, 454 U.S. at 241.  Likewise, a

18  plaintiff's choice of law or choice of substantive claim may be overridden by the *forum non*

19  *conveniens* doctrine.  *Id.* at 250.  A plaintiff's selection of parties does not control the *forum non*

20  *conveniens* analysis, either.  *See Lueck*, 236 F.3d at 1143; *Aguinda*, 303 F.3d at 478 (affirming

21  dismissal even though foreign forum did not permit class actions); *Wong v. PartyGaming Ltd.*,

22  589 F.3d 821, 831 (6th Cir. 2009) (same).  Plaintiffs have cited, and Defendants have found, no

23  case permitting plaintiffs to manipulate their pleadings to remain in a forum that the court has

24  already found inconvenient.

25          In addition to relying on inapposite case law, Plaintiffs' response misunderstands the case

26  law cited by Defendants, which compels dismissal here.  Defendants' opening brief referred the

27  Court to two separate, albeit related, lines of cases rejecting attempts to manipulate the *forum non*

28  *conveniens* analysis.  The first line of cases is directly applicable here and holds that "a party

1   should not be allowed to assert the unavailability of an alternative forum when the unavailability

2   is a product of its own purposeful conduct." *In re Compania Naviera Joanna v. Koninklijke*

3   *Boskalis Westminster NV*, 569 F.3d 189, 203 (4th Cir. 2009); *see also Castillo v. Shipping Corp.*

4   *of India*, 606 F. Supp. 497, 503-04 (S.D.N.Y. 1985); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d

5   1243, 1248 n.10 (5th Cir. 1983). Although Plaintiffs claim that these cases do not apply because

6   they have acted candidly and in good faith, these cases did not discuss bad faith, other than to

7   observe that the plaintiffs there, like Plaintiffs here, protested their good faith. *Compania Naviera*

8   *Joanna*, 569 F.3d at 203. Plaintiffs' choice to re-file their complaints without Airbus and Thales

9   is no different from purposefully letting a statute of limitations lapse. Indeed, as explained in

10  Defendants' motion and ignored in Plaintiffs' response, the *Dardengo* and *Guennoon* cases are

11  more easily dismissed than both *Compania Naviera Joanna* and *Castillo* because Plaintiffs can

12  easily remedy the supposed unavailability of the French forum by prosecuting the allegations of

13  airplane and pitot tube defects pleaded in their complaints. Further, Plaintiffs' attempt to preclude

14  *forum non conveniens* dismissal is all the more readily rejected because they do not contest that

15  this forum is inconvenient. *See infra* Section II.B. Plaintiffs' contention that they can preclude

16  the Court from dismissing an action from an admittedly inconvenient forum merely because they

17  have chosen to make a more convenient foreign forum purportedly unavailable is unprecedented

18  and unsupported.

19          Plaintiffs' protestations of good faith are unavailing for another reason as well. As noted

20  in Defendants' opening brief, all the *Dardengo* Plaintiffs and at least one of the *Guennoon*

21  Plaintiffs are subject to the Court's October 4, 2010, dismissal order. If these Plaintiffs had re-

22  filed in France, omitting claims against Airbus and Thales, and then asserted lack of jurisdiction,

23  the line of cases finding bad faith conduct in the foreign forum unquestionably would apply. *See*,

24  *e.g., Gutierrez*, ___ F.3d at ___, 2011 WL 1312783, at *5; *Mendes Junior Int'l Co. v. Banco do*

25  *Brasil S.A.*, 394 Fed. Appx. 787, 788 (2d Cir. 2010); *MBI Group, Inc. v. Credit Foncier du*

26  *Cameroun*, 616 F.3d 568, 573-74 (D.C. Cir. 2010); *In re Bridgestone/Firestone, Inc.*, 420 F.3d

27  702, 706 (7th Cir. 2005). Indeed, this is exactly what happened in *Mendes Junior*, where the

28

1    Second Circuit refused to reinstate claims in the U.S. forum because the plaintiff had obtained

2    dismissal in the foreign forum by naming different defendants.  394 Fed. Appx. at 788.

3         The situation presently before the Court differs from *Mendes Junior* and the other cases

4    only in that Plaintiffs ask the Court for permission to do what controlling precedent makes

5    abundantly clear they cannot do.  The Ninth Circuit recently affirmed its disapproval of such

6    attempts to "game[] the system" in the foreign forum.  *Gutierrez*, ___ F.3d ___, 2011 WL

7    1312783, at *5.  Remanding for further factual findings, the Ninth Circuit ordered:  "If the district

8    court determines that the primary reason the Mexican courts declined to take jurisdiction of

9    Plaintiffs' case was Plaintiffs' actions or inactions in the case, it retains discretion to again order

10   dismissal, with appropriate conditions, if any."  *Id.* at *4.  Likewise here, the Court should

11   exercise its discretion to reject Plaintiffs' attempt to game the *forum non conveniens* analysis and

12   should instead dismiss the *Dardengo* and *Guennoon* actions.

         **c.    Defendants' Stipulation to Submit to French Jurisdiction and a
13                Conditional Dismissal Satisfy the Availability Requirement**

14

15        Just as they bury inconvenient case law in footnotes, Plaintiffs wait until the closing

16   paragraphs of their brief to address the fact that Defendants have satisfied the availability

17   requirement by stipulating to French jurisdiction and inviting the Court to enter a conditional

18   dismissal.  Contrary to Plaintiffs' characterization, the use of conditional dismissals is not a

19   "pernicious trend."  *See* D.E. 846: Pls.' Resp. at 21.  It is the law of the Ninth Circuit.  *See, e.g.*,

20   *Gutierrez*, ___ F.3d ___, 2011 WL 1312783, at *5-6; *Copitas*, 20 Fed. Appx. at 746 n.1.

21   Conditional dismissals have been widely used for decades.  *See, e.g.*, *In re Air Crash Disaster*

22   *Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987).  Such conditions are an

23   appropriate response when dueling experts disagree on important aspects of foreign law.  *See,*

24   *e.g.*, *Ford Motor*, 591 F.3d at 414; *Ford v. Brown*, 319 F.3d 1302, 1310-11 (11th Cir. 2003).  In

25   *Gutierrez*, a case in which the parties disputed whether the foreign forum would accept

26   jurisdiction, the Ninth Circuit recently reaffirmed the use of conditional dismissal orders, holding

27   that while a return-jurisdiction clause is not required, one may be appropriate.  ___ F.3d ___,

28   2011 WL 1312783, at *5-6.  Here, where Defendants will submit to French jurisdiction, "a return-

jurisdiction clause must weigh heavily in favor of granting the FNC motion." *Ford Motor*, 591 F.3d at 414.

### 3. French Courts Would Hear Plaintiffs' Claims Against the U.S. Defendants

If the Court is inclined to delve into French law, it will find that French courts would hear Plaintiffs' claims against the U.S. Defendants for at least four reasons.

#### a. French Courts May Not Dismiss Plaintiffs' Claims *Sua Sponte*

France is an available forum for the *Dardengo* and *Guennoon* litigation because Article 92 of the French Code of Civil Procedure prohibits French courts from declining jurisdiction over these cases *sua sponte*. In their opening brief, Defendants demonstrated that this restriction applies to both trial and appellate courts. Nevertheless, Plaintiffs insist that a French appellate court may some day, as long as four years after filing of the cases, dismiss the *Dardengo* and *Guennoon* cases for lack of jurisdiction *sua sponte*. Indeed, they suggest that a French appellate court would be eager to do so. Plaintiffs' argument must be rejected for at least three reasons. First, Plaintiffs offer no case authority for their position. Second, Plaintiffs can easily cure any purported jurisdictional limbo. And finally, Plaintiffs' position is illogical and belied by the *Flash Airlines* litigation.

Plaintiffs offer no authority in support of their contention that a French appellate court may dismiss *sua sponte* a case that the trial court may not dismiss *sua sponte*. Whereas Justice Béraudo points to case law and scholarly texts confirming that a French appellate could not dismiss the *Dardengo* and *Guennoon* cases, Plaintiffs continue to rely upon the *Rhine River* case, which merely shows that a French appellate court may dismiss *sua sponte* in a case *where another forum has exclusive jurisdiction*. *See* D.E. 846: Pls.' Resp. at 18 n.21; *see also* D.E. 836-1: *Rhine River* case; D.E. 835: Béraudo Decl. ¶ 7. Plaintiffs also ignore that their own expert, Professor Gaudemet-Tallon, wrote in her text that under Article 92 "the court cannot sua sponte decline jurisdiction" under circumstances just like those here. D.E. 835: Béraudo Decl. ¶¶ 10-11; D.E. 836-1: H. Gaudemet-Tallon, *Compétence Civile et Commerciale* (Aug. 2007, updated June 2010). Indeed, because her observation occurred as part of a discussion of a French Supreme Court

decision, Professor Gaudemet-Tallon's analysis indicates that an *appellate* court cannot decline jurisdiction *sua sponte*.  *Id.*

Even if their reading of Article 92 were correct, Plaintiffs' melodramatic concern that their cases would be "condemned to French jurisdictional limbo" until heard by an appellate court, D.E. 846: Pls.' Resp. at 18, has no merit.  Plaintiffs can easily resolve this purported "limbo" by asserting claims against any French defendant.  Indeed, they never suggest that they would *not* join Air France, Airbus or Thales if they filed in France.  Plaintiffs have not followed through on their offer at the February hearing to release Airbus and Thales, leaving those companies susceptible to claims in France.  Further, the *Guennoon* Plaintiffs admittedly "have not yet decided" whether they will sue Air France in France.  *Id.* at 20 n.25.  This admission that Plaintiffs may assert claims against French defendants in France highlights the gamesmanship and artificiality of their omitting the French companies from these actions.  *See* D.E. 836-1: Recons. Hrg. Tr. at 4:19, 5:1, 6:4 (Feb. 4, 2011) (recognizing that the *Dardengo* and *Guennoon* complaints are merely an "obvious" attempted "end run" or "leapfrog" around the Court's *forum non conveniens* dismissal).

Furthermore, it is absurd to suggest, as Plaintiffs do, that a French appellate court would take the unprecedented move of voluntarily dismissing a case that had already achieved judgment on the merits in a trial court that unquestionably had to hear the case.  *See* D.E. 795-2: Callé Dep. 114:22-117:22 (Dec. 30, 2010); D.E. 835: Béraudo Decl. ¶ 14.  This is all the more true in the context of the *Dardengo* and *Guennoon* cases, which are intimately connected with France, involve third-party claims against French companies, and would likely be among the most closely watched litigation in France in years.  Plaintiffs' illogical and unsupported reading of Article 92 is further belied by the *Flash Airlines* litigation, in which neither the Paris Court of Appeals nor the French Supreme Court raised the jurisdiction question *sua sponte*—even though jurisdiction was hotly contested and, in Plaintiffs' view, *sua sponte* dismissal would have been an efficient and unassailable way to resolve the case.

Finally, Plaintiffs assert that, even if the French courts cannot dismiss the *Dardengo* and *Guennoon* cases *sua sponte*, Plaintiffs themselves are free to challenge the jurisdiction of the

1    French courts.  They assert no authority for this proposition, save Professor Gaudemet-Tallon's

2    misplaced reliance on the vacated *Flash Airlines* opinion.  Plaintiffs offer no sensible explanation

3    why the substantial French case law prohibiting plaintiffs from raising such challenges would not

4    apply to them.  Further, Plaintiffs wholly ignore the ample U.S. case law prohibiting them from

5    raising such jurisdictional challenges in the foreign forum.  *See*, *e.g.*, *Gutierrez*, ___ F.3d ___,

6    2011 WL 1312783, at *5; *Mendes Junior*, 394 Fed. Appx. at 788; *MBI Group*, 616 F.3d at 573-

7    74; *Bridgestone/Firestone*, 420 F.3d at 706.

8                    **b.      French Courts Have Jurisdiction Under Article 24 of
                             Regulation 44/2001**
9

10         Plaintiffs devote five pages of their response to Article 24 of EC Regulation 44/2001, but

11   they cannot obscure the fact that the European Court of Justice ("ECJ") cases interpreting this

12   provision both support the conclusion that it provides jurisdiction over non-E.U. domiciliaries.

13   *See* D.E. 789-9: Case C-412/98, *Reinsurance Co. v. Universal Gen. Ins.*, 2000 E.C.R. I-5925 ¶ 44

14   (July 13, 2000) ("*Group Josi*"); Case C-111/09, *Vienna Ins. Group v. Michal Bilas* (May 20,

15   2010) ("*Bilas*"); D.E. 835: Béraudo Decl. ¶¶ 15-19 & Annex D ¶¶ 25-33) (discussing cases).

16   There simply is no ECJ case law in Plaintiffs' favor.  And while Plaintiffs insist that the ECJ's

17   consistent interpretation of Article 24 is merely *dictum*, they ignore that in European

18   jurisprudence both the operative and non-operative aspects of ECJ interpretations are legally

19   authoritative.  D.E. 835: Béraudo Decl. ¶ 18.

20         Plaintiffs seize upon stray statements in Advocate-General Fennelly's opinion, but none of

21   those passages undermine the Advocate-General's opinion that "*the Convention establishes a*

22   *comprehensive scheme covering all defendants whether or not they are domiciled in a*

23   *Contracting State.*"  *See* D.E. 835: Béraudo Decl. ¶ 17 (quoting Adv.-Gen. Fennelly Op. ¶ 19).

24   For example, although Plaintiffs describe the Advocate-General's list of exceptions to Article 4 as

25   "conclusive," the Advocate-General never asserted that this list was exhaustive.  Nor could he, as

26   the European Court of Justice has consistently found other exceptions, including Article 24.  *Id.* at

27   ¶ 22.  Plaintiffs' criticism of Justice Béraudo's reading of Advocate-General Fennelly's opinion

28   does not make their faulty interpretation of Article 24 any more compelling.

1    Perhaps because European case law and scholarly authority strongly support the

2    application of Article 24 to non-E.U. domiciliaries, Plaintiffs continue to rely upon the *West*

3    *Caribbean* case, DE 789-6, but that unpublished U.S. district court opinion reflected a very

4    different legal and factual context.  In *West Caribbean*, Judge Ungaro relied upon the later-

5    vacated *Flash Airlines* opinion.  She also did not have the benefit of the ECJ's opinion in *Bilas*,

6    which confirmed the applicability of Article 24 to non-E.U. domiciliaries.  Furthermore, Judge

7    Ungaro did not consider the effect of Article 92 and the French courts' inability to dismiss actions

8    *sua sponte*.  As Professor Gaudemet-Tallon has recognized, Article 24 of the Brussels Convention

9    operates in parallel to Article 92 of the French Code of Civil Procedure, strengthening the

10   conclusion that French courts must hear cases submitted pursuant to tacit prorogation of

11   jurisdiction.  *See* D.E. 835: Béraudo Decl. ¶ 12.

12   Additionally, Judge Ungaro's decision hinged on her conclusion that the defendant had to

13   be an E.U. domiciliary in order to "ensure[] a 'close link' between the court and the action …."

14   D.E. 846: Pls.' Resp. at 12 (quoting D.E. 789-6: *West Caribbean* Order at 19).  Perhaps that was

15   true of the *West Caribbean* case, which involved the crash of a Colombian air carrier, killing

16   Colombian crew members, in Venezuela.  D.E. 789-6: *West Caribbean* Order at 4-5.  The same

17   cannot be said of litigation arising out of the AF 447 accident, which is intimately connected to

18   France through the French airline, French airframe manufacturer and French critical component

19   manufacturer, the French technical investigation, and the plurality of French passengers.  These

20   fundamental legal and factual differences fatally undermine Plaintiffs' contention that *West*

21   *Caribbean* applies here.

22   Plaintiffs also assert that Article 24 does not apply because Plaintiffs do not consent to

23   jurisdiction in France.  D.E. 846: Pls.' Resp. at 14.  The Court has already rejected this argument,

24   and properly so.  *See* D.E. 766: Order at 16 n.10 (admonishing that Plaintiffs' refusal to file in

25   France does not affect the superiority of that forum).  Plaintiffs simply are not free to destroy the

26   jurisdiction of a foreign forum in order to manipulate the *forum non conveniens* analysis.  *See,*

27   *e.g., Gutierrez*, ___ F.3d ___, 2011 WL 1312783, at *5.

28

DEFENDANTS' FNC REPLY
CASE NOS. C 10-4948 CRB & C 10-5513 CRB
MDL NO. 10-2144 CRB

-14-

1

2

      **c.**      **French Courts Have Jurisdiction Under Traditional**
                  **Jurisdiction Rules Governing Accidents on the High Seas**

3

4

5

6

7

8

9

10

11

French courts also may exercise jurisdiction based on Article 46 point 2 of the French Code of Civil Procedure. Plaintiffs point to no authority suggesting that a French court would not consider the place of injury of a French flag-carrying aircraft that crashed outside any state's territory to be in France. Instead, they seek to distract the Court with unfounded attacks on Justice Béraudo. They accuse him of "misstating" and "distorting" Professor Gaudemet-Tallon's opinions, but fail to explain how. D.E. 846: Pls.' Resp. at 19, n.24. More importantly, Plaintiffs cannot deny the logical analogy between the maritime accidents on the high seas and aviation accidents on the high seas. Nor can Plaintiffs seriously contest the clear interest of the French courts in this matter. *See* D.E. 766: Order at 17-18.

12

      **d.**      **French Courts Will Have Jurisdiction Through Impleader or Joinder**

13

14

15

16

17

Finally, French courts could exercise jurisdiction over the *Dardengo* and *Guennoon* cases based on the French impleader rules. Plaintiffs' response misconstrues these provisions. Like U.S. interpleader rules, French procedure allows a defendant to implead any potential claimants. The defendant does not need to assert that the impleaded party is liable. D.E. 835: Béraudo Decl. ¶ 30. Thus, the absence of claims against the *Dardengo* and *Guennoon* Plaintiffs is immaterial.

18

19

20

21

22

23

24

25

26

Further, Plaintiffs' response ignores that at least four cases arising out of the crash of AF 447 have been filed in France, Dillow Reply Decl. ¶ 3, and that this Court has already dismissed more than 40 additional cases in favor of France. D.E. 766: Order. Plaintiffs can ensure French jurisdiction over the *Dardengo* and *Guennoon* cases simply by joining any of these cases and impleading the U.S. Defendants, as permitted under French procedure. D.E. 835: Béraudo Decl. ¶ 33. Rather than adopt this efficient and logical approach, Plaintiffs contend that the Court should keep *all* cases here. D.E. 789: Pls.' Recons Mot. But that would be the tail wagging the dog. The *Dardengo* and *Guennoon* cases should join the numerous cases already dismissed, not vice versa.

27

28

4.      **French Courts Are Concededly Adequate to Hear Plaintiffs' Claims**

Plaintiffs do not contest the adequacy of the French courts.  The Court thus should affirm its prior holding that "France is an adequate alternative forum."  D.E. 766: Order at 13; *see also Dattner v. Conagra Foods, Inc.*, 91 Fed. Appx. 179, at *2 (2d Cir. 2004); *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606-07 (10th Cir. 1998).

**B.      Private and Public Interest Factors Strongly Favor Dismissal**

Plaintiffs' response does not contest the public and private interest factors central to the *forum non conveniens* analysis.  Accordingly, the substantially greater convenience of the French forum for the *Dardengo* and *Guennoon* cases is uncontroverted.  In keeping with its prior determination, and as reinforced through the numerous recent developments further connecting this litigation to France, the Court should hold that the public and private interest factors weigh strongly in favor of dismissal.

**III.      Dismissal in Favor of Brazil Is Not Before the Court**

In the final footnote to their response, Plaintiffs ask the Court to impose certain conditions premised on dismissal to Brazil.  D.E. 846: Pls.' Resp. at 24 n.27.  Dismissal to Brazil is not before the Court.  Nor do Defendants believe that conditions beyond those already stipulated to by Defendants, *see* D.E. 834: Defs.' Mot. at 24 n.10, and a possible return-jurisdiction provision are necessary.  "[A] district court can be required to impose conditions if there is a justifiable reason to doubt that a party will cooperate with the foreign forum."  *Gutierrez*, ___ F.3d ____, 2011 WL 1312783, at *5 (quoting *Leetsch v. Freedman,* 260 F.3d 1100, 1104 (9th Cir. 2001)).  In sharp contrast to Plaintiffs' professed intent to challenge the jurisdiction of the French courts, there is no reason to doubt Defendants' cooperation in France.

**IV.      Conclusion**

*Dardengo* and *Guennoon* are an improper end-run around the Court's *forum non conveniens* dismissal.  France remains an available forum as a matter of U.S. and French law, and the private and public interest factors support dismissal even more strongly now than when the Court ordered dismissal the first time.  Defendants' motion to dismiss should be granted.

1

2          Respectfully submitted,

3                                          By:  /s/ John Dillow_____

4                                          JOHN DILLOW (SBN 50403) (*Pro Hac Vice*)
                                           V.L. WOOLSTON (*Pro Hac Vice*)
5                                          PERKINS COIE LLP
                                           1201 Third Avenue, Suite 4800
6                                          Seattle, WA 98101
                                           Telephone:  (206) 359-8000
7                                          Facsimile:  (206) 359-9000
                                           JDillow@perkinscoie.com
8                                          VWoolston@perkinscoie.com

9

10                                         Attorneys for Defendant
                                           INTEL CORPORATION
11

12    William V. O'Connor
      MORRISON & FOERSTER LLP
13    12531 High Bluff Drive Suite 100
      San Diego, CA 92130
14    Phone: (858) 720-5100
      Fax: (858) 720-5125
15    Email: woconnor@mofo.com

16    **Counsel for Honeywell International Inc.**

17    Jonathan M. Stern
      SCHNADER HARRISON SEGAL & LEWIS LLP
18    750 Ninth Street, N.W., Suite 550
      Washington, DC 20001
19    Phone: (202) 419-4202
      Fax: (202) 419-4252
20    Email: jstern@schnader.com

21    **Counsel for Motorola, Inc. and Freescale Semiconductor, Inc.**

22
      Patrick E. Bradley
23    REED SMITH LLP
      136 Main Street, Suite 250
24    Princeton Forrestal Village
      Princeton, NJ 08540
25    Tel: (609) 987-0050
      Fax: (609) 951-0824
26    Email: pbradley@reedsmith.com

27    **Counsel for Rockwell Collins, Inc.**

28

Sheila A. Sundvall
PAUL HASTINGS JANOFSKY & WALKER LLP
191 North Wacker Drive, 30th Floor
Chicago, IL 60606
Phone: (312) 499-6000
Fax: (312) 499-6100
Email: sheilasundvall@paulhastings.com

**Counsel for General Electric Co.**

Raymond G. Mullady, Jr.
BLANK ROME LLP
Watergate 600 New Hampshire Ave., NW
Washington, DC 20037
Tel: (202) 772-5828
Fax: (202) 572-8414
Email: mullady@blankrome.com

**Counsel for Rosemount Aerospace Inc.**

Lisa J. Savitt
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Phone: (202) 624-2500
Fax: (202) 628-5116
Email: lsavitt@crowell.com

**Counsel for E.I. du Pont de Nemours and Company**

1

**CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies that all counsel of record who are deemed to have

3    consented to electronic service are being served this 20th day of May, 2011, with a copy of this

4    document via the Court's CM/ECF system. I certify that all parties who have appeared in this

5    case are represented by counsel who are CM/ECF participants. Any other counsel of record will

6    be served by electronic mail, facsimile transmission, and/or first class mail on this same date.

7

8

9                                                          _____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' FNC REPLY
CASE NOS. C 10-4948 CRB & C 10-5513 CRB      -19-
MDL NO. 10-2144 CRB