1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE AIR CRASH OVER THE MID-ATLANTIC ON JUNE 1, 2009 | No. C 10-02144 CRB |
| This Order Relates to: | **MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR RECONSIDERATION** |
| *Dardengo, et al. v. Honeywell International Inc., et al.*, C 10-4948-CRB; and *Guennoon, et al. v. Honeywell International Inc., et al.*, C 10-5513-CRB | |

————————————————————————/

These cases concern who is responsible for the crash of Air France Flight 447.  The Motions presently before the Court raise the issue of where these cases ought to be heard. This is the second time the question of the proper forum for suits arising from the crash of Air France Flight 447 has been presented to the Court.  Once again, the Court concludes that the United States is not the proper forum.

**I.    BACKGROUND[1]**

Most of the Plaintiffs in this action, non-French foreigners, had their original Complaints dismissed on *forum non conveniens* grounds last year.  Oct. 4, 2010 Order (dkt. 766).  They have re-filed suit (the <u>Dardengo</u> and <u>Guennoon</u> actions), this time omitting all

---

[1]   This Court sketched out the background facts in more detail in its October 4, 2010 Order and presents here only the background necessary to frame the issues presently before it.

United States District Court
For the Northern District of California

French Defendants.[2]  In Plaintiffs' view, the absence of French Defendants makes dismissal of the Dardengo and Guennoon actions on *forum non conveniens* grounds impossible because France is now an unavailable forum (i.e., French courts would not have jurisdiction over a case brought by non-French plaintiffs against non-French defendants).  Plaintiffs also seek reconsideration of this Court's original dismissal Order on the theory that, if the Dardengo and Guennoon actions are going to proceed in the United States, it makes sense to allow the original suits to proceed here as well, at least if the French Defendants are dropped from those actions.[3]

Defendants, American component part manufacturers, move to dismiss the Dardengo and Guennoon actions on *forum non conveniens* grounds and ask that the Court deny reconsideration of the original *forum non conveniens* ruling.

For the following reasons, the Motion to Dismiss (dkt. 834) is GRANTED and the Motion for Reconsideration (dkt. 789) is DENIED.

## II.    LEGAL STANDARD

A party moving to dismiss based on *forum non conveniens* bears the burden of showing that (1) there is an adequate alternative forum, and (2) the balance of private and public interest factors favors dismissal.  See Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142-43 (9th Cir. 2001).  A domestic plaintiff's forum choice is entitled to considerable deference, whereas a foreign plaintiff's forum choice is entitled to less deference.  Ravelo Monegro v. Rosa, 211 F.3d 509, 513 (9th Cir. 2000) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256, 102 S. Ct. 252, 70 L.Ed.2d 419 (1981)).

---

[2]  Some Plaintiffs had yet to file suit when the original *forum non conveniens* dismissal occurred.  Of the 30 Plaintiffs in the Dardengo and Guennoon actions, 18 are subject to the original *forum non conveniens* dismissal Order.  Seven more had filed cases naming French Defendants by the time of the Court's Order, but the Order came before those actions were consolidated into the MDL.  Thus, 25 of the 30 Plaintiffs either are subject to the original *forum non conveniens* Order or would have been once their original actions were transferred into the MDL.  Further, the Court was informed at oral argument that 2 of the 5 "new" Plaintiffs settled their claims, and the remaining 3 "new" Plaintiffs have filed actions in France.  See June 3, 2011 Hearing Tr. (dkt. 955) at 10-11.

[3]  Alternatively, Plaintiffs ask the Court to dismiss their actions to Brazil rather than France.

2

**United States District Court**
For the Northern District of California

1    A plaintiff's choice of forum will not be disturbed unless the private and public

2   interest factors strongly favor trial in the foreign country.  See Gates Learjet Corp. v. Jensen,

3   743 F.2d 1325, 1334 (9th Cir. 1984).  "[T]he standard to be applied [to a motion for

4   dismissal on the ground of *forum non conveniens*] is whether . . . defendants have made a

5   clear showing of facts which . . . establish such oppression and vexation of a defendant as to

6   be out of proportion to plaintiff's convenience, which may be shown to be slight or

7   nonexistent."  Cheng v. Boeing Co., 708 F.2d 1406, 1410 (9th Cir. 1983) (internal quotation

8   marks and citation omitted).

9    Reconsideration is proper if the district court (1) is presented with newly discovered

10   evidence, (2) committed clear error or made a decision that was manifestly unjust; or (3) if

11   there is an intervening change in law.  Weeks v. Bayer, 246 F.3d 1231, 1236 (9th Cir. 2001).

12   **III.   DISCUSSION**

13   **A.    Plaintiffs Have Created The Jurisdictional Uncertainty About Which They Complain And Cannot Rely on That Uncertainty to Defeat Dismissal**

14
15    Defendants argue that two separate but related lines of authority show that dismissal is

   proper notwithstanding Plaintiffs' attempt to file suits that a French court would not hear.
16
   Reply in Supp. of Mot. to Dismiss (dkt. 865) at 8-9.  In sum, these two lines of authority hold
17
   that (1) a party cannot purposefully defeat the availability of a foreign forum and then assert
18
   unavailability as a basis to defeat *forum non conveniens* dismissal and (2) a party subject to a
19
   *forum non conveniens* dismissal order (as Plaintiffs are) must litigate in the foreign forum in
20
   good faith and cannot contrive to defeat the foreign court's jurisdiction.[4]
21
22   **1.    Plaintiffs Cannot Make France Unavailable By Artificially Declining to Name French Defendants**

23   "'A party should not be allowed to assert the unavailability of an alternative forum

24   when the unavailability is a product of its own purposeful conduct.'"  In re Compania

25   Naviera Joanna S.A. v. Koninklijke Boskalis Westminster NV, 569 F.3d 189, 203 (4th Cir.

26   2009) (quoting and agreeing with In re Compania Naviera Joanna S.A., 531 F. Supp. 2d 680,

27   686 (D.S.C. 2007)).  Yet, this is exactly what Plaintiffs are attempting to do by re-filing suits

28

   _____

   [4] As mentioned, the 3 "new" Plaintiffs still in this case have already filed suits in France.

United States District Court
For the Northern District of California

that omit French Defendants they previously asserted were liable and still seem to allege are at least partially responsible.  See, e.g., Dardengo Compl. ¶ 5 ("[T]he legal and factual issues (as relates to forum non conveniens) presented in this action are not the same as those presented in the actions considered in [] October . . . .") (emphasis added); Guennoon Compl. Introduction (similar).[5]

The following two cases help demonstrate that Plaintiffs cannot avoid dismissal by pleading with a design to render France an unavailable forum.  First, in In re Compania Naviera Joanna, the Fourth Circuit affirmed a *forum non conveniens* dismissal to China even though the statute of limitations in China had run because "plaintiffs knowingly and purposefully opted to miss the deadline for filing their claims in [China]."  569 F.3d at 203 (quoting and agreeing with district court).  Likewise, in Castillo v. Shipping Corp. of India, the plaintiff allowed a foreign forum's statute of limitations to expire and then argued that that forum was unavailable.  606 F. Supp. 497, 503-504 (S.D.N.Y.) (1985).  In rejecting the unavailability argument, the court in Castillo noted that "[i]t would be a strange world if a litigant could 'bootstrap' himself into a [United States] court by missing the statute of limitations in the proper forum."  Id.

Here, Plaintiffs "purposefully opted" not to re-file their dismissed pleadings in France, instead choosing to re-file actions here designed to defeat *forum non conveniens* dismissal.  This is the sort of conduct found impermissible in In re Compania Naviera Joanna and Castillo.  Moreover, the case for *forum non conveniens* dismissal here is even stronger than in In re Compania Naviera Joanna and Castillo because France was available to Plaintiffs (all they had to do was file the already dismissed suits in France or the Dardengo and Guennoon

---

[5] The artificiality of Plaintiffs' pleading is demonstrated by the facts that (1) they previously named French Defendants and dropped them only after losing the original *forum non conveniens* fight; (2) the available evidence suggests that French companies are at least partially responsible for the crash in that (a) a French company designed and manufactured the plane and was responsible for its testing; (b) a French company manufactured a product (pitot probes) that failed in flight; and (c) a French company trained the pilots, who may have acted negligently by, for example, not diverting around inclement weather; (3) the French authorities have indicted two French companies (Airbus and Air France) for involuntary manslaughter, but no American companies have been charged; and (4) at oral argument, counsel for Plaintiffs candidly acknowledged that "[we have] a presumptive right to choose the forum and to choose who [to] sue, granted, for the purpose of creating jurisdiction."  See June 3, 2011 Hearing Tr. (dkt. 955) at 24.

4

United States District Court
For the Northern District of California

actions with French Defendants) whereas in <u>In re Compania Naviera Joanna</u> and <u>Castillo</u> the foreign forums were unavailable because the statutes of limitations had run.[6]

### 2. Absent Meaningful New Evidence As to Liability Justifying a Change in Parties, Plaintiffs Cannot Re-File Here With the Purpose of Defeating a Prior *Forum Non Conveniens* Dismissal

In addition, a long line of jurisprudence holds that a plaintiff whose case is dismissed for *forum non conveniens* must litigate in the foreign forum in good faith. <u>See, e.g.</u>, <u>Gutierrez v. Advanced Med. Optics, Inc.</u>, – F.3d –, 2011 WL 1312783 at *4 (9th Cir. 2011) ("If the district court determines that the primary reason the Mexican courts declined to take jurisdiction of Plaintiffs' case was Plaintiffs' actions or inactions in the case, it retains discretion to again order dismissal, with appropriate conditions, if any."); <u>MBI Group, Inc. v. Credit Foncier du Cameroun</u>, 616 F.3d 568, 573-74 (D.C. Cir. 2010) (plaintiffs not entitled to litigate in United States because "plaintiffs consistently worked to undermine their suit in Cameroon."); <u>Huang v. Advanced Battery Tech., Inc.</u>, No. 09-8297, 2011 WL 813600 at *2 (S.D.N.Y. Mar. 8, 2011) (denying request to reinstate lawsuit dismissed on *forum non conveniens* grounds because "it appears that [plaintiff] has not pursued his claims in China with any real diligence[.]").

If, following this Court's October Order, Plaintiffs had gone to France and filed actions deliberately omitting the parties necessary to establish jurisdiction, this Court would have been justified in not accepting them back. <u>See Gutierrez</u>, – F.3d –, 2011 WL 1312783 at *4. Absent a meaningful change in facts regarding liability,[7] there is no principled reason why a different result should obtain where, as here, Plaintiffs have simply skipped the step of going to France and instead re-filed new actions here that they assert are outside the jurisdictional cognizance of the French courts.

---

[6] It appears that, as of the writing of this Order, the statute of limitations has now run in France. <u>See</u> June 3, 2011 Hearing Tr. (dkt. 955) at 20.   However, that was not the case when this Court issued its first *forum non conveniens* Order in October of last year.

[7] Additional physical evidence, including the plane's "black boxes," has been discovered since this Court's Order last fall. However, that evidence (1) does not appear to meaningfully change the existing liability picture such that the French Defendants would no longer be obvious, important parties; and (2) was not recovered until <u>after</u> Plaintiffs re-filed suit and thus could not have impacted their decision to drop the French Defendants.

### 3.     Plaintiffs' Arguments Against Dismissal Are Not Compelling

Plaintiffs grapple with the above lines of authority by asserting that (1) they are acting in good faith and in a transparent fashion; and (2) plaintiffs generally as a rule are free to frame their complaints however they wish, including choosing whom to sue and where to sue them.  See, e.g., Opp'n to Mot. to Dismiss (dkt. 846) at 9 n.4.  Both of the foregoing might be true as a general matter, but they do not prevent dismissal here.

First, Plaintiffs' good faith (transparency with the Court and opposing parties regarding their desire not to litigate in France and attempts to make dismissal to France impossible) is not the test for whether dismissal is appropriate.  Indeed, in In re Compania Naviera Joanna, counsel in that case, as here, were honest about their desire not to litigate in a foreign forum and their attempt to render the foreign forum unavailable.  569 F.3d at 203 ("As counsel acknowledged candidly to the district court, '[the party] made a reasoned decision after being notified that there was a limitation of liability proceeding instituted in the courts of China not to participate and let the statute of limitations run.'").  Notwithstanding that candor, the Fourth Circuit upheld the district court's dismissal.

> In circumstances as these, a claimant should not be heard to complain that an available forum, having jurisdiction over the parties and over most of the witnesses, is not available.  [Plaintiff], relying on its assessment that any recovery under Chinese law would be inadequate, made the considered decision to pass on the Chinese proceedings and try to invoke U.S. law, which it thought would be more favorable to it, yet recognizing that if it were unable to invoke U.S. law, it would be unable to proceed in China.  In these circumstances, the district court properly found an exception to the requirement of the forum non conveniens doctrine that the alternative forum be available.

Id. (citing Veba-Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1248 n.10 (5th Cir. 1983); In re Bridgestone/Firestone, Inc., 420 F.3d 702, 706 (7th Cir. 2005); Castillo, 606 F. Supp. at 504).

Second, Plaintiffs' argument that, as a general matter, they are free to frame their Complaints as they wish ignores entirely the fact that *forum non conveniens* is by its nature a doctrine that limits plaintiffs' choices.  Indeed, Plaintiffs cite no *forum non conveniens* cases condoning a post-dismissal re-filing designed to make the foreign forum unavailable by

6

1    omitting the parties necessary to establish jurisdiction abroad.  Nor is the Court aware of any

2    such authority.

3          Thus, the fact that plaintiffs generally have freedom to craft their complaints as they

4    wish does not prevent dismissal because these Plaintiffs are subject to a *forum non*

5    *conveniens* Order and have engaged in pleading practices deliberately designed to defeat

6    jurisdiction in the foreign forum and circumvent that Order.

                                            * * *

7          In light of the foregoing, (1) the Motion to Dismiss (dkt. 834) is GRANTED and (2)

8    the Motion for Reconsideration (dkt. 789) is DENIED.[8]

9          Plaintiffs cannot render France unavailable through unilateral jurisdiction defeating

10   pleading, at least where, as here, (1) a fair reading of those pleadings and common sense

11   shows that French entities are proper Defendants; (2) Plaintiffs already sued French parties

12   and dropped them only after a *forum non conveniens* dismissal; and (3) the Court has not

13   been presented with any new facts that developed after the original dismissal but before the

14   filing of the new actions that plausibly provide a reason for why Plaintiffs removed the

15   French Defendants, other than a desire to defeat the Court's original *forum non conveniens*

16   Order and render France an unavailable forum for the new actions.

17   **B.    Forum Non Conveniens Dismissal is Appropriate Because France is
             Available**

18

19         In the alternative, and to the extent the Court is required to determine availability

20   anew, dismissal is still appropriate.

21         **1.    A French Court Would Permit Litigation of the Subject Matter of
                   the Dispute**

22

23         Defendants argue that France is an available forum even if a French court would not

24   hear the Dardengo and Guennoon actions as pleaded because "availability" turns on the

25   existence of a remedy rather than a plaintiff's ability to bring the exact suit filed in the United

26   States in the foreign forum.  Mot. to Dismiss (dkt. 835) at 9-11.  The Court agrees.

_____

27        [8] Plaintiffs based their Reconsideration Motion on the theory that this Court would have to hear
     the Dardengo and Guennoon actions and that, accordingly, it made sense to reconsider the prior
28   dismissal Order.  In light of the Court's ruling on Defendants' Motion to Dismiss, there is no basis to
     reconsider the Court's prior dismissal Order.  See Weeks, 246 F.3d at 1236.

                                              7

**United States District Court**
For the Northern District of California

There is authority inside and outside the Ninth Circuit that, to establish "availability" of a foreign forum, a defendant need not show that a plaintiff can bring the exact suit he filed in the United States in the foreign forum.  For example, in <u>Lueck</u>, 236 F.3d at 1143, the Ninth Circuit held that "[t]he district court was not required to ask whether Plaintiffs could bring this lawsuit in New Zealand, but rather, whether New Zealand offers a remedy for their losses."  <u>Id.</u>  Just as the Ninth Circuit found in <u>Lueck</u>, "[a] [French] remedy is unquestionably available here.  According to the complaint, the losses for which Plaintiffs seek compensation are their physical injuries sustained in the accident and the resulting loss of earnings. . . . .  Although [French] law [might] not permit Plaintiffs to maintain this exact suit, [France], . . . continues to provide a remedy for Plaintiffs' losses.").  <u>See id.</u>

Plaintiffs attempt to sidestep <u>Lueck</u> by arguing that <u>Lueck</u> was a case about "adequacy" rather than "availability" because in <u>Lueck</u> there was no question that the foreign forum had subject matter jurisdiction.  But Plaintiffs' distinction fails to create a meaningful difference on the facts before the Court.  A remedy is indisputably available in France, <u>even against the exact American Defendants Plaintiffs have sued</u>.  Plaintiffs could have re-filed the dismissed actions in France or filed the <u>Dardengo</u> and <u>Guennoon</u> actions there and added one or more French Defendants.  Nor is requiring Plaintiffs to name the parties necessary to establish jurisdiction in France an onerous obligation, at least where, as here, they already named those Defendants once before, and they are still proper parties.

The caselaw Plaintiffs cite does not suggest a different outcome.

For example, Plaintiffs rely on <u>Phoenix Canada Oil Co. v. Texaco, Inc.</u>, 78 F.R.D. 445, 454-56 (Del. 1978), in support of their argument that the uncertainty as to whether a French court would hear the <u>Dardengo</u> and <u>Guennoon</u> actions requires denial of Defendants' *forum non conveniens* Motion.  In <u>Phoenix Canada</u>, a Delaware district declined to dismiss on *forum non conveniens* grounds because, in part, it found Equador to be an unavailable forum.  It made that unavailability determination because there was "no assurance that the Ecuadorian justice system would consent to accepting jurisdiction over defendants it otherwise might not be able to reach because of jurisdictional limitations in Ecuadorian law."

8

United States District Court
For the Northern District of California

Id. at 456.  The critical distinction between Phoenix Canada and this case is that here it is undisputed that a French court would have jurisdiction over the American Defendants if Plaintiffs filed in France the originally dismissed suits or added one or more French Defendants to the Dardengo and Guennoon actions.[9]  Moreover, there was no discussion in Phoenix Canada of whether the plaintiffs in that case dropped parties to deprive Ecuador of jurisdiction or otherwise manipulated their pleading so as to create the jurisdictional uncertainty of concern to that court.

Nor does Ceramic Corp. of America v. Inka Maritime Corp. Inc., 1 F.3d 947, 949 (9th Cir. 1993), also relied upon by Plaintiffs, establish that dismissal here is improper.  In Ceramic, the Ninth Circuit reversed a *forum non conveniens* dismissal where it was undisputed that the foreign forum would *sua sponte* enforce a forum selection clause and dismiss the action.  Id. at 949.  Here, not only do the parties appear to agree that a French trial court could not dismiss the Dardengo and Guennoon actions *sua sponte*, but Defendants have submitted an expert Declaration that a French appellate court would not *sua sponte* dismiss the Dardengo and Guennoon actions either.[10]  Thus, unlike in Ceramic, *sua sponte* dismissal from the foreign forum is far from certain.  Further, the court in Ceramic did not address whether the foreign forum was available to the plaintiffs if they pursued earlier dismissed actions or added defendants implicated by their own pleadings.

Finally, Plaintiffs assert that In re West Caribbean Crew Members, 07-22015-CIV-UNGARO, an unpublished district court case out of Florida, shows that France is unavailable.  Dkt. 789-6.  That case concerned the crash in Venezuela of West Caribbean Airways Flight 708 en route from Panama to Martinique.  Id. at 2.  The plaintiffs were 9

---

[9] There are other notable distinctions between this case and Phoenix Canada as well.  For example, in Phoenix Canada the jurisdictional uncertainty was compounded by the fact that "it appear[ed] that no generally codified Ecuadorian legal remedy exist[ed] for unjust enrichment or the tort claims."  Id. at 456.  Likewise, there was a concern in Phoenix Canada, though not in this case, "that even if jurisdiction existed and plaintiff received a verdict in Ecuador, defendants perhaps could not be penalized effectively" because "the only legal device for enforcing ministerial government decisions in Ecuador is caducity, and Ecuador allegedly could not impose this remedy upon defendants because of its economic dependence on them."  Id. at 454.

[10] The Court addresses this issue in more detail *infra* Section III.B.2.

9

**United States District Court**
For the Northern District of California

1   representatives acting on behalf of 7 deceased West Carribean Airways crew members (all

2   Colombian residents).  <u>Id.</u>  All of the defendants were U.S. based corporations.  <u>Id.</u>  The

3   defendants moved to dismiss on *forum non conveniens* grounds, arguing that the French

4   court in Martinique was a more suitable forum than Florida.  <u>Id.</u> at 1, 5-6.  The plaintiffs

5   countered that the court in Martinique lacked jurisdiction to hear claims by non-French

6   plaintiffs against non-French defendants.  <u>Id.</u> at 6-7.  The court agreed with the plaintiffs.  <u>Id.</u>

7   at 25 ("Defendant[s] have failed to sustain their burden of persuasion that the French courts

8   would exercise jurisdiction over this controversy.").

9       Even assuming *arguendo* that <u>In re West Caribbean</u> was rightly decided, that court

10  was not faced with the situation presented here:  where the carrier, the plane's manufacturer,

11  and the manufacturer of a component part that failed in flight are all French companies that

12  were named Defendants in prior suits by these Plaintiffs.  There was no analysis in <u>In re</u>

13  <u>West Caribbean</u> of whether the plaintiffs in that case, in an effort to defeat French

14  jurisdiction, deliberately declined to name French entities that their own prior and current

15  pleadings implicated.  Nor did the <u>In re West Caribbean</u> court talk about whether France

16  could be made an available forum if the plaintiffs added French Defendants that were

17  logically and legally implicated by the plaintiffs' own prior and current pleadings.

18               **2.      A French Court Would Not *Sua Sponte* Dismiss the <u>Dardengo</u> and**
                          **<u>Guennoon</u> Actions**

19

20      Each side has presented expert testimony on whether, if the question were put to it, a

21  French court would conclude that it has jurisdiction over the <u>Dardengo</u> and <u>Guennoon</u>

22  actions.  Framed in that way, the issue is uncertain, and that uncertainty would typically be

23  enough to defeat a *forum non conveniens* dismissal.  <u>See</u> <u>Dole Food Co., Inc. v. Watts</u>, 303

24  F.3d 1104, 1119 (9th Cir. 2003); <u>In re West Caribbean Crew Members</u>, 07-22015-CIV-

25  UNGARO. However, in the Court's view, even absent a clear, affirmative grant of

26  jurisdiction, it is unlikely that a French court would dismiss the <u>Dardengo</u> and <u>Guennoon</u>

27  actions.  Thus, France is an available jurisdiction.

28      A defendant's agreement to submit to the jurisdiction of a foreign forum typically

    ends the court's inquiry as to availability.  <u>See</u> <u>Piper</u>, 454 U.S. at 254 n.22; <u>Contact Lumber</u>

United States District Court
For the Northern District of California

1   Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1450 (9th Cir. 1990).  However, under some

2   circumstances, for example, where it is uncertain whether the foreign forum has subject

3   matter jurisdiction, a further inquiry on availability is required.  See generally Ceramic Corp.

4   of Am., 1 F.3d at 949.

5        Defendants' expert on French law, Jean-Paul Béraudo, concludes, among other things,

6   that "French courts cannot *sua sponte* decline jurisdiction over this case."  Béraudo Decl.

7   (dkt. 835) ¶ 5.  The issue of *sua sponte* dismissal is critical because Defendants have agreed

8   not to contest jurisdiction in France, and Plaintiffs, as a condition of *forum non conveniens*

9   dismissal, are obligated as a matter of American law not to contest jurisdiction in France.

10  See Gutierrez, 2011 WL 1312783 at *4 ("If the district court determines that the primary

11  reason the Mexican courts declined to take jurisdiction of Plaintiffs' case was Plaintiffs'

12  actions or inactions in the case, it retains discretion to again order dismissal, with appropriate

13  conditions, if any."); see also Morales v. Ford Motor Co., 313 F. Supp. 2d 672, 676 (S.D.

14  Tex. 2004).  Thus, in the Court's view, the only way the jurisdictional issue can be raised

15  properly in France is if the French court decides to raise it *sua sponte*.

16       Béraudo's opinion regarding a French court's inability to raise *sua sponte* the

17  jurisdictional question is based, in large part, on Article 92 of the French Code of Civil

18  Procedure.  Article 92 provides that:

19           Lack of jurisdiction may be declared *sua sponte* in cases of contempt
             of a subject-matter jurisdictional rule where such rule pertains to
20           public policy or where a defendant does not appear.  Lack of
             jurisdiction may only be declared in the aforementioned cases alone.
21
             Before a Court of Appeal and the Supreme Court, lack of jurisdiction
22           may be raised *sua sponte* only where the matter falls within the
             jurisdiction of a criminal or administrative court or lies outside the
23           cognizance of a French court.

24  Béraudo Decl. (dkt. 835) ¶ 6.[11]

25

26

27  ───────────────

28       [11] Béraudo also relies upon two decisions from the European Court of Justice which say, albeit
    apparently in dictum, that a defendant's consent is sufficient to establish jurisdiction in an EU member
    forum regardless of where the defendant is domiciled.  See  Béraudo Decl. (dkt. 835).

1   Plaintiffs appear to agree that a French trial court could not dismiss the <u>Dardengo</u> and

2   <u>Guennoon</u> actions *sua sponte*. <u>Id.</u>; <u>see also</u> Opp'n to Mot. to Dismiss (dkt. 846) at 17 n.19

3   ("[I]t may be true that the <u>Darndengo</u> and <u>Guennoon</u> cases would not fall into any of the

4   categories in which a French <u>trial</u> court might question its own jurisdiction under Article 92 .

5   . . .") (emphasis in original).  Plaintiffs argue, however, that a French <u>appellate</u> court could

6   *sua sponte* dismiss the <u>Dardengo</u> and <u>Guennoon</u> actions.  <u>Id.</u>  In support of this position, they

7   rely largely on two cases from appellate courts in France.  Neither is compelling authority for

8   the proposition that a French appellate court would *sua sponte* dismiss the <u>Dardengo</u> and

9   <u>Guennoon</u> actions.

10   The first case, which the parties refer to as <u>Flash Airlines</u>, is a now vacated decision

11   from the Paris Court of Appeals.  Certified Translation of Decision (dkt. 789-11); Opp'n to

12   Mot. to Dismiss (dkt. 846) at 18.  That case was about a January 2004 crash of a Boeing

13   plane operated by Flash Airlines (Egyptian headquartered) belonging to a California

14   company that crashed a few minutes after its takeoff in Egypt.  Certified Translation of

15   Decision (dkt. 789-11) at 22.[12]  Several plaintiffs filed suit in the United States against

16   Boeing, among others, and that suit was dismissed on *forum non conveniens* for France.  <u>Id.</u>

17   at 23.  The Paris Court of Appeals was presented with the argument that it could not hear the

18   merits of actions by non-French plaintiffs against non-French defendants, broadly speaking,

19   the same scenario presented here.  <u>Id.</u> at 24.  It dismissed on jurisdictional grounds.  <u>Id.</u> at 36.

20   Notwithstanding its superficial similarity to the <u>Dardengo</u> and <u>Guennoon</u> actions,

21   <u>Flash Airlines</u> does not show that dismissal of the <u>Dardengo</u> and <u>Guennoon</u> actions on

22   jurisdictional grounds would be forthcoming for three primary reasons.  First, <u>Flash Airlines</u>

23   has been vacated.  Opp'n to Mot. to Dismiss (dkt. 846) at 18 n. 21 ("That opinion, of course,

24   was vacated, but on other grounds.").  Second, it is factually distinguishable from <u>Dardengo</u>

25   and <u>Guennoon</u> in several respects.  For example, (a) the French authorities in <u>Flash Airlines</u>

26   were "merely associated with" the crash investigation, Certified Translation of Decision (dkt.

27

28   [12] On the version of the decision the Court is utilizing, dkt. 789-11, the text of the decision starts on page 22 and continues through page 37.  Page citations are to those page numbers.

United States District Court
For the Northern District of California

789-11) at 35, but here they are critically involved; (b) the plane's manufacturer in Flash Airlines was not a French company, id. at 22, but here it is; and (c) the carrier in Flash Airlines was not a French a company, id., but here it is.  In sum, the connection between Dardengo and Guennoon and France is significantly stronger than the connection between Flash Airlines and France, casting into considerable doubt Flash Airlines's predictive value on the jurisdictional question.  Third, Flash Airlines was not a *sua sponte* dismissal; rather, the French courts in Flash Airlines were presented with an argument by the plaintiffs against their exercise of jurisdiction.  Id. at 24 ("[A]ppellants asked the Court to . . . find 'that no legal provision of French law gives jurisdiction to the French court to rule on the appellants' action for liability against the four American defendants,' and that the matter is beyond the hearing of the French jurisdiction . . . .").  Thus, Flash Airlines, even were it not vacated, still does not show that a *sua sponte* dismissal would be forthcoming with respect to Dardengo and Guennoon.

The second case, which the parties refer to as the Rhine River case, was a *sua sponte* dismissal by the French Supreme Court of a case that was, by treaty, required to be heard in a non-French forum.  See Béraudo Decl. (dkt. 835) ¶ 7.  No such exclusive jurisdictional provision exists here.

Finally, Plaintiffs direct the Court to In re West Caribbean, the district court case out of Florida discussed above.  The reason why the Court is not persuaded by In re West Caribbean that France is unavailable is subtle but significant.  The court in In re West Caribbean did not address the narrow question of whether a French court would *sua sponte* dismiss on jurisdictional grounds.  Rather, it framed and addressed the issue more broadly, asking whether jurisdiction existed in France.  Dkt. 789-6 at 8 ("The parties heavily dispute . . . whether the Martinique court can exercise jurisdiction over a dispute between the parties to this case.").  The difference in how the issue is addressed is important because, as a practical matter, France is available if neither party can contest jurisdiction and the French court would not dismiss *sua sponte*.  Thus, although the Court understands and appreciates In re West Caribbean's thoughtful and lengthy discussion regarding French jurisdiction over

**United States District Court**
For the Northern District of California

cases by non-French plaintiffs against non-French defendants, it is not persuaded by that

discussion that France is unavailable.

* * *

Thus, the combination of Article 92 and the lack of authority that a French appellate

court would *sua sponte* dismiss the Dardengo and Guennoon actions shows that France is an

available forum.  Because the Court does not believe a *sua sponte* jurisdictional dismissal of

the Dardengo and Guennoon actions would be forthcoming, there is no need to delve deeply

into what, in the Court's view, is the essentially academic question of the existence of an

affirmative basis for French jurisdiction.

### 3.    The Private and Public Interest Factors Tip Strongly Toward Dismissal

Plaintiffs, though they disagree with the Court's original analysis of the public and

private interest factors, "acknowledge[] that none of the changes since the October 4 Order

would have material bearing on them."  Opp'n to Mot. to Dismiss (dkt. 846) at 21 n.26.

Thus, the Court will not re-address those factors in depth and instead incorporates the

discussion contained in the October 4, 2010 Order.  See dkt. 766 at 13-20.

It is worth noting, though, that events since this Court's prior ruling show that the

private and public interest factors tip even more strongly toward dismissal now.  For

example, after an extensive search effort led by the French, the "black boxes" and other

physical evidence have been recovered.  Mar. 5, 2011 France 24 International News Article

(dkt. 864) Ex. 1a.  Access to that evidence will be easier in France, where it is being held,

than here.  In addition, French authorities continue to investigate the crash's cause, and Air

France and Airbus (but no American companies) have been indicted by French authorities for

involuntary manslaughter.  Id.; see also May 17, 2011 Wall Street Journal Article (dkt. 864)

Ex. 1b.  Moreover, unlike the original *forum non conveniens* motions, this case no longer

involves any American plaintiffs.

### C.    No Additional Conditions of Dismissal Will Be Imposed

Plaintiffs ask that, in the event that the Motion to Dismiss is granted and the Motion

for Reconsideration denied, the Court impose certain additional conditions of dismissal.

1   Opp'n to Mot. to Dismiss (dkt. 846) at 24 n. 27; Mot. for Reconsideration (dkt. 789) at 20.

2   In addition, the Brazilian Plaintiffs ask that the Court's original *forum non conveniens* Order

3   be amended to provide for dismissal of their claims to Brazil.  Mot. for Reconsideration (dkt.

4   789) at 20.  Defendants argue that it is too late for Plaintiffs to seek additional conditions of

5   dismissal and that the conditions the Court already imposed are sufficient.

6           This Court was not asked to and did not provide an analysis of whether Brazil was an

7   appropriate alternative forum, and the Brazilian Plaintiffs certainly could have raised that

8   issue during the original *forum non conveniens* analysis.  See Kona Enters. v. Estate of

9   Bishop, 229 F.3d 887, 890 (9th Cir. 2000) (reconsideration cannot be used to make

10  arguments that could reasonably have been raised sooner).  Indeed, dismissal to Brazil on the

11  present record would be error because there has been no analysis of the relevant public and

12  private interest factors or the adequacy and availability of that forum.

13          With respect to the proposed additional conditions for dismissal of the original

14  actions, they are denied because they (1) were not sought at the outset of the briefing on the

15  original motion to dismiss and no reasonable reason for not asking for them has been

16  provided; (2) are duplicative of conditions already imposed or not necessary in light of them;

17  and (3) are an improper attempt to place this Court in the position of resolving discovery

18  matters (e.g., who pays for translation costs) that are properly addressed by the French

19  courts.

20          Finally, the Court, for two reasons, declines to impose a condition allowing Plaintiffs

21  to return to the United States should a French court dismiss the Dardengo and Guennoon

22  actions on jurisdictional grounds.  First, the primary basis for this Order is that Plaintiffs

23  cannot defeat a *forum non conveniens* dismissal by filing Complaints that a French court

24  would not hear.  Second, and relatedly, Plaintiffs subject to the original *forum non*

25  *conveniens* Order (almost all of them) could have re-filed those actions in France without any

26

27

28

jurisdictional barrier.[13]  Thus, a condition allowing Plaintiffs to return following a

jurisdictional dismissal of the <u>Dardengo</u> and <u>Guennoon</u> actions is not warranted.

**IV.      CONCLUSION**

For the foregoing reasons, the Motion to Dismiss (dkt. 834) is GRANTED and the

Motion for Reconsideration (dkt. 789) is DENIED.

**IT IS SO ORDERED.**

Dated:  June 15, 2011

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

---

[13] As mentioned above, the three Plaintiffs not subject to the original Order who are still in the case have already started actions in France.  <u>See</u> June 3, 2011 Hearing Tr. (dkt. 955) at 10-11.